# REED v. LIGHT.

[No. 21,015.   Filed June 12, 1908.]

1. PLEADING.—*Complaint.*—*Sales.*—*Principal and Agent.*—*Commissions.*—*Frauds, Statute of.*—A complaint alleging that defendant employed plaintiff, as agent, to sell certain stock; that defendant agreed to pay plaintiff the sale price in excess of a certain sum per share; that plaintiff secured a purchaser therefor, contracted such stock to such purchaser, and notified defendant thereof, who ratified such contract; that such purchaser was ready to execute the contract, but defendant refused to consummate such sale, and demanding judgment for such excess in the sale price, is not bad on the grounds that the agent sold such stock in such agent's own name, or that the contract of employment violated the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881). p. 553.

Reed *v.* Light—170 Ind. 550.

2. CONTRACTS. — *Principal and Agent.* — *Sales.* — *Commissions.* — *Frauds, Statute of.*—The statute of frauds (§7469 Burns 1908, §4910 R. S. 1881) does not apply to contracts made by a principal with his agent for the payment, to such agent, of a commission on sales made by such agent, where the purchaser was ready to perform the contract entered into with such agent. p. 556.

3. SAME.—*Abandonment of.—Agents.—Return of Consideration.*— Where an agent contracted, on behalf of his principal, to sell and deliver certain stock to a purchaser, the purchaser paying to such agent a part of the purchase price, and the principal afterward refused to deliver such stock, the agent's return to the purchaser of the part payment does not constitute an abandonment of the contract of sale as to such agent, and he is entitled to recover his commission on such sale. p. 566.

4. SAME.—*Sales.—Principal and Agent.—Appeal.—Weighing Evidence.*—Where the evidence of an agent shows that his principal directed him to sell certain stock and he procured a purchaser therefor, the principal at first affirming the sale and afterward repudiating same, and the principal's evidence is in conflict therewith, the jury's verdict in favor of the agent for the commission due upon such sale will not be disturbed on appeal. p. 566.

5. APPEAL.—*Assignments of Error.—Permitting Amendments to Complaint.*—The ruling of the trial court in permitting the amendment of a complaint after the beginning of the trial must be assigned as error independently on appeal, and does not constitute a reason for a new trial. p. 567.

6. NEW TRIAL.—*Continuance.—Causes for.—How Shown.—Appeal.* —In order to question, on appeal, the trial court's ruling on a motion for a continuance, the record must contain an affidavit filed in support of such motion, showing the causes for asking such continuance. p. 567.

7. TRIAL.—*Interrogatories.—Construction of Written Contract.*— It is improper to submit an interrogatory to the jury asking for a construction or interpretation of a written offer, such question being for the court. p. 568.

8. CONTRACTS.—*Agency.—Consideration.*—An offer made to an agent to give him a certain sum for the sale of stock, and an acceptance thereof by such agent, constitute a contract, no other consideration being necessary. p. 569.

9. TRIAL.—*Interrogatories.—Materiality.—Assumption of Facts.*— It is not erroneous for the court to refuse to submit requested interrogatories the answers to which must be immaterial, or which contain assumptions of facts in dispute. p. 569.

10. EVIDENCE. — *Impeaching.—Agency.—Contracts.—Breach.—Subsequent Transactions.*—In an action by an agent for the recovery

of commissions upon a sale 'which his principal had repudiated, evidence that plaintiff, several days after such repudiation, asked such principal for an option on the stock—the subject of such sale—is not admissible, the rights of the parties being legally fixed by such repudiation. p. 569.

11.   TRIAL. — *Instructions.—Correctness.—Applicability.*—Incorrect or inapplicable instructions should be refused. p. 570.

From Superior Court of Marion County (69,723) ; *James M. Leathers,* Judge.

Action by Robert C. Light against William S. Reed. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*W. N. Harding, A. E. Hovey, Pierre Gray* and *Omer U. Newman,* for appellant.

*Henry N. Spaan* and *Jameson, Joss & Hay,* for appellee.

JORDAN, J.—Appellee sued appellant in the Superior Court of Marion county to recover a certain commission for the sale, as agent of appellant, of 4,000 shares of the common stock of the Indianapolis & Northwestern Traction Company. The original complaint was subsequently amended and the cause finally submitted to the jury upon the complaint as amended. A demurrer for want of facts was overruled to the latter complaint. Answer in two paragraphs—first, the general denial, the second alleged affirmative matter. Appellee's reply to the second paragraph of the answer was the general denial. Trial by jury and a verdict returned in favor of appellee for the sum of $20,000. Along with this general verdict the jury returned answers to certain interrogatories. Appellant unsuccessfully moved for judgment upon the answers to the interrogatories. He also moved for a new trial. This motion was denied and judgment was rendered upon the verdict.

From this judgment he appeals, and assigns that the court erred: (1) In overruling the demurrer to the amended complaint; (2) in overruling his motion for judgment upon the answers to the interrogatories; (3) in overruling the motion for a new trial.

The amended complaint alleges that on June 9, 1905, the defendant, Reed, employed the plaintiff, Light, as agent to sell 4,262 shares of the common stock of the Indianapolis & Northwestern Traction Company; that defendant agreed to pay plaintiff for his services in selling the stock all sums for which the plaintiff would sell the stock over twenty-five cents on the dollar. It is averred that in accordance with the terms of employment plaintiff, on June 12, 1905, sold 4,000 shares of said stock to Medford B. Wilson, of Indianapolis, Indiana, and on June 13, 1905, he (the plaintiff) informed the defendant of said sale, and the defendant agreed with him (the plaintiff) to deliver said stock on July 1, 1905, for the use of said purchaser; that said purchaser was ready, willing and able to accept said stock and pay for the same, in accordance with the terms of sale, on July 1, 1905, the day upon which the stock was to be delivered; that on June 12, 1905, said Medford B. Wilson paid the plaintiff the sum of $100 as a credit upon the purchase price of said stock; that plaintiff sold said stock to said Wilson for the sum of thirty cents on the dollar, making the amount of the sale $120,000; that on said July 1, 1905, the defendant failed and refused to deliver the stock either to plaintiff or to said purchaser, and the defendant has never delivered said stock; that the plaintiff sold said stock for $30 per share, and under his employment as agent he is entitled to $5 for each share so sold, making in the total $20,000; that said sum is now due and unpaid. Wherefore he demands judgment, etc.

Appellant's counsel first insist that the complaint is not sufficient on demurrer, and in support of this insistence they advance the following reasons: (1) That appellee, as a broker, could not sell the stock in controversy in his own name. They assert that the complaint alleges that he was employed by appellant to sell the stock as an agent; but, upon the contrary, they argue that the pleading avers that he sold it in his own name. (2)

That it is the duty of a broker, who does not have possession of the stock which he is employed to sell, to report the terms of any proposed sale to his principal for his approval. Consequently they argue that the complaint is deficient in this respect because it does not allege that appellee, as agent, ever reported to his principal, appellant herein, the sale of the stock in question. (3) There is no allegation of any memorandum signed by appellant of the alleged sale or of any delivery by appellant of any part of the stock or any part payment to appellant. This, it is argued, was essential in order for the complaint to show that the sale of the stock was not within the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881), which provides that ''no contract for the sale of any goods, for the price of $50 or more, shall be valid, unless the purchaser shall receive part of such property, or shall give something in earnest to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized.'' The complaint in this case is not open to the objections urged by appellant's counsel. To recapitulate, the pleading shows that appellee, on June 9, 1905, was employed by appellant to sell the stock in controversy. He was to receive as a commission for his services all the money the stock sold for over twenty-five cents on the dollar. On the 12th day of the same month, under the contract of his employment, he sold 4,000 shares thereof to Medford B. Wilson for thirty cents on the dollar. Said purchaser paid to appellee on June 12, $100 as a credit upon the purchase price of the stock. On the day following the sale appellee reported the sale to appellant, and the latter agreed to deliver the stock on July 1, 1905, for the use of said purchaser, who, on July 1, 1905, the day of delivery, ''was ready, willing and able to accept the stock and pay for same.'' The failure and refusal of appellant to deliver it on July 1, 1905, or at any other time, is disclosed by the

averments in the complaint. Appellee, under his employment, by reason of the sale so made, was entitled to the sum of $20,000, which is due and unpaid.

In regard to the first objection urged against the complaint it may be said that it is true ordinarily that a broker has no implied authority to buy or sell in his own name. But certainly there is nothing in the complaint to show that appellee in any manner violated this rule of the law. It is not averred that he sold the stock in his own name; but, on the contrary, the pleading alleges that he sold the stock to Wilson for thirty cents on the dollar, and on the day following he reported his transaction to appellant, and that the latter agreed to deliver the stock for the use of said purchaser on July 1, 1905. Under his employment, as alleged in the complaint, appellee, it appears, was authorized as the agent of appellant to make the sale of the stock for a price not less than twenty-five cents on the dollar. Or, in other words, under the employment he undertook to find a purchaser who would be ready, willing and able to buy the stock of appellant at the price stipulated. It appears that, in pursuance of his employment, he found a purchaser who agreed to buy 4,000 shares of stock at a price of thirty cents on the dollar. This agreement upon the part of Wilson appellee reported to appellant, and the latter appears to have approved the sale; at least, he agreed to deliver the stock on July 1, 1905, for the use of said purchaser. Reducing the question raised upon the demurrer to the complaint to a simple proposition, it may be said that appellee, under his employment as the agent of appellant, found a purchaser who agreed to buy the stock in controversy at a price over and above that prescribed by appellant. Upon being informed by appellee of this sale, appellant appears to have approved it by agreeing to deliver the stock, on the date alleged, for the use of said purchaser. It further shows that such purchaser was ready, willing and able to accept and pay for the stock on the day upon which it was

to be delivered, but, through the default and refusal of appellant to deliver the stock, the sale was not actually effected. That appellee, under the facts set up in the complaint, is entitled to recover his commission, is a well-settled proposition. *Lockwood* v. *Rose* (1890), 125 Ind. 588; *McFarland* v. *Lillard* (1891), 2 Ind. App. 160, 50 Am. St. 234; *Rabb* v. *Johnson* (1902), 28 Ind. App. 665; *Indiana, etc., Co.* v. *Robinson* (1902), 29 Ind. App. 59. There is no merit in the third point suggested by appellant, to the effect that the complaint is bad because it does not show that the sale of the stock was not within the statute of frauds. Appellee, in answer to this proposition, asserts that the provisions of §7469, *supra,* do not apply to the sale of stock of a corporation, and cites *Vawter* v. *Griffin* (1872), 40 Ind. 593, and *Hinkle* v. *Fisher* (1885), 104 Ind. 84. As to whether this section of the statute is applicable to the sale in controversy is a question not here involved. It must be remembered that this is not an action between the vendor and vendee in relation to the stock, but is merely a suit by appellee to recover the commission alleged to be due him. Were it conceded that the sale in controversy was under the facts subject to the statute of frauds, nevertheless appellant could not invoke the statute to defeat the payment of appellee's commission, because it appears that Wilson, the purchaser, was ready, willing and able to comply with his agreement to purchase. *Lockwood* v. *Rose, supra; Fischer* v. *Bell* (1883), 91 Ind. 243; *McFarland* v. *Lillard, supra; Fox* v. *Starr* (1902), 106 Ill. App. 273; *Sayre* v. *Wilson & Ingram* (1888), 86 Ala. 151, 5 South. 157.

The purchaser in this case was not the one who failed to carry out the agreement to buy the stock, but the default in this respect was wholly upon the part of appellant.

2. By this default the efforts of appellee in securing a purchaser who was ready, willing and able to pay for the stock on the day fixed for its delivery were rendered futile. Nevertheless, he is entitled to the payment of his

commission the same as if the sale of the stock had been actually consummated. It follows that the complaint states a cause of action, and the court did not err in overruling the demurrer.

The evidence in the case most favorable to plaintiff establishes the following facts: Plaintiff is a resident of Broad Ripple, Marion county, Indiana, and has resided in that town for twenty-six years. He testified that for the last five years he had made a specialty of transactions in stocks and bonds of interurban railroad companies; that his office is at No. 535 State Life Building in the city of Indianapolis, and that his letterheads contain the word "broker." He was acquainted with the defendant, William S. Reed, who resided at the city of Chicago, Illinois, and that prior to June 9, 1905, he had transacted business for the defendant. On the latter date he and the defendant had a conversation in the plaintiff's office in the State Life Building. In regard to this conversation, the plaintiff testified that the defendant said "he wanted to give me an opportunity to make a big pile of money; that he had 4,262 shares in the Indianapolis & Northwestern Traction Company; that the Boston people, Rollins & Company, and other parties were, in his opinion, trying to euchre him out of his deal; that I was the man to prevent it; that if I could sell his stock right away so it would net him twenty-five cents on the dollar he would like for me to do it; that he would give me all over $25 a share that I sold it for, and that he would like to know the early part of the next week: I said I would do my best, but it was a short time; that I would undertake to sell the stock and would go at it immediately. On Saturday, June 10, I talked with Medford B. Wilson, president of the Columbia National Bank of Indianapolis, and on Monday, June 15, 1905, closed the deal with Mr. Wilson at $30 per share. A copy of my written offer and his written acceptance is as follows. [These documents were introduced in evidence.]

'Indianapolis, Indiana, June 12, 1905.
Medford B. Wilson, City.

I hereby agree to sell you 4,000 shares of the common stock of the Indianapolis & Northwestern Traction Company for the sum of $30 per share, the par value of each share being $100, and on your acceptance of this offer I will arrange to have the stock placed in the Columbia National Bank of this city, to be delivered to you on your return from New York City, and on the payment of the price as above named, it being agreed or understood that you will pay for said stock within ten days from this date.

R. C. Light.'

'R. C. Light, City.

I hereby accept your offer to sell me 4,000 shares of the common stock of the Indianapolis & Northwestern Traction Company, and inclose you a check for $100 as a guarantee that I will take the stock and pay for it on the terms of your offer.

Medford B. Wilson.' ''

Plaintiff further testified that on Tuesday, June 13, 1905, he, very early on that day, called the defendant over the long distance telephone at the Chicago Beach Hotel, Chicago, Illinois, and notified him that he had sold 4,000 shares of stock, and that he would take the remaining 262 shares himself. He stated to the defendant that the party to whom the stock had been sold wanted it delivered or put up so that he would know he would get it; that he would have to make some arrangements for the money to pay for the stock, and that he would have to be certain that he would get the stock. Plaintiff informed the defendant that he had agreed to deliver the stock, and that it was bought within ten days after it was put up at the Columbia National Bank. The defendant in this conversation over the telephone informed the plaintiff that he (defendant) could not get the stock until July 1; that it had not been issued to him, but for plaintiff to arrange for delivery of the stock on July 1, 1905. After this conversation, on the same day in the afternoon, it was agreed between Medford B. Wilson and the plaintiff that instead of the stock being delivered in ten days

it should be delivered on July 1, 1905, and accordingly plaintiff sent defendant the following telegram:

"June 13, 1905.

To William S. Reed,
    Chicago Beach Hotel, Chicago.
    Have sold 4,000 shares Indianapolis & Northwestern stock as per our talk this a. m. over phone, delivery to be made July 1.                           R. C. Light."

On the day following, June 14, 1905, the plaintiff received a letter from the defendant, dated Chicago, June 13, 1905. In this letter the defendant wrote to plaintiff as follows:

"Dear Sir:
    In the matter of the sale of my stock in the Northwestern, which we have talked over, I find that through a syndicate agreement I will not be at liberty to do anything until after July 1, next. The stock is tied up until that date, and a clause in the agreement citing that I must, prior to that date, give any member of the syndicate the first right to purchase. Therefore, we will have to let matters rest as they are until after that date. From a legal standpoint, I could not even quote you a price. Therefore, you had better let matters rest until that date, and be very careful about talking about it and instruct your party also to keep very quiet.
                    Yours very truly,
                        W. S. Reed."

In answer to this letter, on June 14, 1905, the plaintiff wrote the defendant as follows:

"W. S. Reed, Esq.,
    Chicago Beach Hotel, Chicago.
    Dear Sir: Your letter dated Chicago, June 13, is at hand. After you were in my office last Friday, I proceeded in a quiet way to sell 4,000 shares of Indianapolis & Northwestern Traction Company stock as per your proposition, having promised to try to have the matter definitely arranged by Tuesday the 13th, when you said you would be in our city and see me. I sold this stock to one of my most intimate friends and of course made five points on the sale as profit to myself. The party left Indianapolis on Monday for New York and requested me, as stated over long distance telephone yesterday morning, to have you put the stock up in

escrow, or confirm the sale by wire, as he would be compelled to dispose of certain securities he had in order to raise the money. After my talk with you over the telephone, I expected a wire as per your promise until 3 o'clock. I then took it for granted that you had concluded to write instead of wire, and wired my man in New York that the deal was all right. He is a good friend of mine and will keep everything mum. I have wired him this morning as follows: 'Waldorf Hotel, New York City. Do nothing further in regard to purchasing stock which I bargained you on Monday until you return to Indianapolis. Mum must be the word. Will explain why on your return.' Yesterday afternoon, after wiring my man in New York that the deal was all right, I sent you the following telegram to Chicago: [This is the telegram heretofore copied, dated June 13.] You can therefore rest assured that your wishes to leave the matter stand as per our understanding of last Friday until the first of July, as per your letter, will be complied with. I hope, however, that you will be in Indianapolis within the next day or so, when we will talk the matter over further. Assuring you that you will find me always ready to coöperate in a fair and honorable business with my friends, I am,

Yours very truly,

R. C. Light."

On June 20 plaintiff wrote defendant as follows: .

"W. S. Reed,
   Chicago Beach Hotel,
     Chicago, Illinois.
My Dear Reed:

Failing to see you in Indianapolis last week, as per our talk over the long distance telephone on last Tuesday, the 13th (you having told me then that you would be in Indianapolis the latter part of the week), I am somewhat at a loss to know exactly what to do. As heretofore stated to you, immediately after you were in my office on June 9, and made me the proposition to sell me, or any syndicate I might form, a little over 4,000 shares of the common stock of the Indianapolis & Northwestern Traction Company at $25 a share, I proceeded at once to place the stock and did place it at $30 a share, not knowing, of course, but what you would be in a position to make immediate delivery, until our conversation over the L. D. on June 13, when you informed me you

could not make delivery until July 1. I then arranged with my party by wire for delivery on July 1. I have just been served with a notice from the man to whom I sold the stock that he will expect the stock to be delivered to him on that date, and that the money is ready now and will be ready at that time to pay for it. You will, therefore, understand, Mr. Reed, that there must not be any delay in the delivery of this stock, as I will have the money ready to pay you as per your proposition.

In conclusion I trust you will realize that the matter is in such shape that prompt action will be necessary and that there will be nothing left undone on your part that may cause me any embarrassment when the time comes for delivery of the stock, as a failure upon your part to deliver the stock to me would certainly precipitate litigation, as the parties I have sold it to would be sure to institute suit against me for damage, should I fail to make delivery. Trusting that I will see you or hear from you soon, I am,

Respectfully yours,

R. C. Light.

P. S. Yesterday afternoon I wired you as follows:
'W. S. Reed, Chicago Beach Hotel, Chicago, Ill.,

Important I see you. When will you be in Indianapolis? Answer.                 Dr. Light'—
and I was very much disappointed at not receiving any reply from you.''

The stock sold to Wilson was never delivered to him, either by the defendant or the plaintiff, and was never delivered to the Columbia National Bank, and plaintiff never received any part of the commission. The stock was never in the possession of the plaintiff. The check for $100, which was sent by Wilson in his letter of acceptance, was never cashed, but was returned to him by the plaintiff either on July 5 or 6, 1905. On June 12 the defendant did not know that plaintiff had sold the stock to Wilson, but upon being informed of the sale, by plaintiff on June 13, over the long distance telephone, he consented to it. What the plaintiff reported to defendant on June 13 was that the contract had been made. No consideration whatever passed

between the plaintiff and defendant in respect to employment, the only consideration was that all over $25 per share. was to be. paid to plaintiff as a commission. On July 6, 1905, the plaintiff sent the defendant a letter, wherein he stated that on July 5, 1905, he had received a letter from M. B. Wilson, the man who had agreed to buy the stock. In this letter he enclosed the following, which was a copy of the letter he had received from Wilson on July 5:

"R. C. Light, Esq.,
        535 State Life Building, City.
Dear Sir: On June 12, 1905, you contracted to sell to me 4,000 shares of the common stock of the Indianapolis & Northwestern Traction Company at the price of $30 per share, the par value of each share being $100. Afterwards I agreed with you that the time of delivery and payment of the same should be extended to July 1, but not beyond that date. You have not performed your contract, and the shares of stock have not been delivered, or tendered, to me. In my judgment the shares of stock were on July 1 worth $50 per share or upwards. I now hereby notify you that I expect and intend to hold you, or your principal, or both of you, liable for damages for failure to perform the contract.
                        Very truly yours,
                                M. B. Wilson."

In the letter of July 6 the plaintiff wrote as follows:

"Mr. Wilson is the gentleman to whom I sold your stock as per our previous arrangement. As you did not deliver the stock to me on July 1, as you agreed to do, I could not make delivery to Mr. Wilson. This letter explains itself. I shall expect you to settle with me for all damages I have sustained and all liabilities I have incurred by reason of your failure to keep your agreement with me and make delivery of stock on July 1. Trusting that you will realize the importance of arranging to see me at an early date, and that we may be able to adjust the matter in a way satisfactory to all concerned, I am,          Respectfully yours,
                                R. C. Light."

On cross-examination the plaintiff was asked, and answered, the following questions: "Q. Therefore Mr. Reed

never consented to your making that contract with Mr. Wilson? A. On the 13th he did, over the long distance telephone. Q. The 12th? A. No. He authorized me on the 9th to sell the stock. Q. After the contract with Mr. Wilson was made, then what you notified the defendant was that you had made this contract with Mr. Wilson that you gave in evidence a while ago? A. Yes, sir. Q. The written contract? A. Yes, sir.'' The plaintiff's testimony in regard to the conversation between him and the defendant at his office on June 9, 1905, was to an extent corroborated by Levi P. Harlan, who testified that he was in an adjoining room to that in which plaintiff and defendant were, and that he heard portions of their conversation about stocks. He heard plaintiff say that $125,000 was a lot of money to raise, and probably could not be raised in a day or two. He heard the person who was talking with plaintiff say he would like to have the matter adjusted or disposed of at as early a date as possible. Medford B. Wilson, a witness for the plaintiff, testified substantially as follows: ''I have lived in Indianapolis fifteen years. Engaged in banking. Was president of the Capital National Bank, and am now president of the Columbia National Bank, on Washington street, Indianapolis. I signed the written acceptance of the offer of plaintiff to sell me 4,000 shares of stock. I understood that I was buying 4,000 shares of the Indianapolis & Northwestern Traction Company's common stock. I talked with the plaintiff in the bank. Under the first agreement the stock was to be delivered in ten days. This agreement was afterwards changed, the delivery to be on July 1. Plaintiff requested and agreed with me to extend time of delivery to July 1, 1905. I was ready and willing to take the stock from June 12 to July 1 inclusive. I was ready, willing and financially able to pay for it on July 1, and was also ready and able to pay for it on July 5. I wrote a letter to plaintiff, holding him responsible for stock. [This letter was introduced in evidence and is the same one

hereinbefore set out.] The plaintiff came to me and said he wanted to sell me so many shares of the stock of the Northwestern Railway. I asked him whose stock it was, and he was reluctant to tell me whose stock it was, because, like all brokers, they are afraid that somebody else would find it out and sell it under them, but finally he told me whose stock it was. He said it was Mr. Reed's.''

The defendant testified in his own behalf, in which he stated that he resided in Chicago, and had been engaged in building railroads for eighteen years; that he had known the plaintiff about three years; that he (the defendant) had engaged in building the Indianapolis & Northwestern Traction Company's line through Townsend, Reed & Company, of which company Townsend was president and he was a director; that by contract he had become the owner of 4,262 shares of traction stock. He admitted that on June 9, 1905, he had a conversation with the plaintiff in the latter's office at Indianapolis, Indiana. He testified that in this conversation the plaintiff wanted to know ''if I still owned stock in the company. Told him I did; that I had over four thousand shares. Plaintiff wanted to know if I wanted to sell it. I told him I did. He wanted to know the price. I told him $25 a share. He told me he might be able to sell it. I think that was about all that occurred as to sale of stock. Nothing was said in the conversation about plaintiff acting as my agent. Nothing said about a big bunch of money.'' He stated that on the morning of June 13, 1905, he had a telephone conversation with plaintiff; that he was then at the Chicago Beach Hotel, and in this conversation plaintiff said ''he had practically sold 4,000 shares of my stock, and wanted it delivered right away. I told him he had no authority from me to sell 4,000 shares of stock to anybody; that the stock was not in my possession; that it would not be in my possession until after July 1; that I was not at liberty to talk to anybody or to sell or offer to sell any stock to any one until after July 1.''

He never knew anything about the contract made by plaintiff with Wilson at the time it was made. In fact, the defendant denied that he had ever employed the plaintiff as his agent to sell his stock. There is a direct conflict between his evidence and that given by plaintiff.

The evidence given in behalf of appellee may be said to prove the cause of action as alleged in the complaint, and fully sustains the judgment below. Some of the same propositions which were raised and discussed by counsel for appellant upon the demurrer to the complaint are renewed upon the argument that the evidence is insufficient to uphold the judgment of the trial court. It is contended that appellee made the contract with Wilson to sell the stock in his own name and on his own account, and consequently he only found a purchaser for himself and not for the appellant. This argument is not tenable. It will be noted that appellee testified that after he had offered to sell the stock to Wilson, and after the latter had accepted the offer and agreed to purchase the same, he, on the day following— June 13—reported the sale or transaction to appellant over the long distance telephone; that appellant consented to the sale and directed appellee to arrange for delivery of the stock on July 1, 1905. The evidence given by Mr. Wilson, the purchaser, also shows that at the time he agreed to purchase the stock appellee told him it belonged to Mr. Reed, the appellant. While appellee, in his written proposition to Wilson to sell the shares of stock in controversy, may have formally made the offer in his own name, nevertheless the evidence discloses that Wilson knew that appellee was not the owner of the stock, and consequently was not proposing to close or consummate the deal in his own name, but only as the agent of appellant, his principal. Under the terms of the employment appellee was not limited to finding a purchaser for appellant's stock, but he was authorized to fix the sale price at any sum in excess of twenty-five cents on the dollar. Under the contract of em-

ployment he was confined to and had agreed to accept as a compensation or commission for his services in making the sale or procuring a purchaser whatever amount for which he sold the stock in excess of twenty-five cents on the dollar.

The evidence which the jury appears to have accepted as the most credible establishes that appellee secured a purchaser for the stock in question at thirty cents on the dollar. This fact he reported to appellant, and the latter approved the sale and directed appellee to arrange for the delivery of the stock on July 1, 1905. Wilson, the purchaser, as shown, was on July 1 ready and willing to take the stock and able to pay for the same on that day. Appellant, however, as the evidence discloses, failed to deliver the stock on July 1, or at any time, and made no attempt in any manner whatever to consummate the sale with the purchaser procured by appellee. He now contends in this action that the evidence shows that the proposed sale was abandoned by reason of the return by appellee to Wilson of the one-hundred-dollar check. There is no force in this contention. It appears that the check was not returned until six days after the date upon which appellant had agreed to deliver the stock. Wilson was not required to wait beyond July 1 for the stock to be delivered. As appellant had failed to comply with his agreement, the purchaser was excused from any further obligation upon his purchase and was entitled to have the check canceled or returned to him. He in no manner is shown to have abandoned the proposed sale, but the failure to consummate or perfect it is shown to have been wholly due to the default of appellant.

Appellant raises and discusses other propositions upon the evidence, but these have been considered and determined adversely to his contention upon our consideration of the sufficiency of the complaint. We cannot reverse or disturb the judgment upon the evidence.

It is disclosed that after the introduction of the evidence,

but before the argument for appellant had commenced, appellee, upon leave of court, was permitted to amend

5. his original complaint.   In allowing this amendment, counsel for appellant insist that the court erred. This question, however, is not properly before us for review, for the reason that the ruling of the court in this respect is not assigned as an independent error, but is only assigned in the motion for a new trial as one of the reasons therefor. It is settled that a ruling of the trial court in allowing a pleading in the case to be amended, in order to present any question for review upon appeal, must be assigned as error independently of the motion for a new trial.   Such ruling does not constitute a cause or ground for new trial.   *Fireman's Fund Ins. Co.* v. *Finkelstein* (1905), 164 Ind. 376, and authorities there cited.

It is insisted that the motion for new trial should have been sustained because the court erred in denying appellant a continuance or postponement of the trial to enable

6. him to prepare for the trial of the action as set out in the amended complaint.   There is, however, no affidavit or any other proof in the record to establish that he had a good cause for continuance.   At least we are not referred in his brief to any affidavit or other proof which was presented to the trial court in support of the application for a continuance.   It will be noted that §403 Burns 1908, §394 R. S. 1881, 1 Thornton's Civil Code, §169, declares that "no cause shall be delayed by reason of an amendment," and that any delay on account of amendment of a pleading must be "upon good cause shown by affidavit of the party or his agent asking such delay."   Section 404 Burns 1908, §395 R. S. 1881, 1 Thornton's Civil Code, §170, requires that the affidavit in support of a continuance "shall show distinctly in what respect the party asking the delay has been prejudiced in his preparation for trial by the amendment."   Section 421 Burns 1908, §411 R. S. 1881, 1 Thornton's Civil Code, §189, provides that "any

court, for good cause shown, may continue any action at any stage of the proceedings,'' etc. As the record in this case does not disclose that appellant showed by affidavit or other competent proof any cause in support of his motion for a continuance, therefore we are not in a position to determine whether the lower court abused its legal discretion to the prejudice of appellant in denying the continuance. Available error is only presented in a case in which the record discloses that the court has done an injustice to the complaining party by its decision or ruling in refusing to grant him a continuance. *Whitehall* v. *Lane* (1878), 61 Ind. 93; *Belck* v. *Belck* (1884), 97 Ind. 73; *Brandt* v. *State, ex rel.* (1897), 17 Ind. App. 311; *Eslinger* v. *East* (1885), 100 Ind. 434.

7. Appellant requested the submission to the jury of seven interrogatories. The court submitted four of these and refused the other three. The jury, by the answers to the first, second and third of the interrogatories, finds that the plaintiff was employed by the defendant as his agent to sell for him certain shares of the common stock of the Indianapolis & Northwestern Traction Company; that this employment was made on June 9, 1905, at the office of plaintiff; that the plaintiff at no time ever had any of the stock in his possession. The fourth interrogatory submitted to the jury is as follows: ''Was the only sale of any of said stock by said plaintiff made by said plaintiff in his own name to Medford B. Wilson under and by virtue of a written memorandum which reads as follows: [Here the written offer of appellee to Wilson, of date of June 12, 1905, hereinbefore set out in the record, proposing to sell to him the stock, is made a part of this interrogatory]?'' This interrogatory was answered, ''Yes.'' The appellant moved for judgment in his favor upon the answers to the interrogatories. This motion was denied. Of this ruling he complains. By the fourth interrogatory, as framed, the jury was requested to construe or interpret the

written offer made by appellee to Wilson. This interrogatory was not properly framed, and should not have been submitted to the jury. It requested the jury to give an interpretation or construction to the written document therein set out. It was not the province of the jury to construe or interpret the document in question. There is no antagonism between the answers of the jury and the general verdict. The motion for judgment, therefore, was properly overruled.

The court did not err in refusing to submit to the jury interrogatories numbered five, six and seven, as requested by appellant. By the fifth the jury was asked to

8. find whether there was any consideration paid by plaintiff to defendant for his employment as agent. The payment of any particular consideration by appellee for his employment by appellant as his agent was not essential to the validity of the contract of employment, and is not material to appellee's right of recovery herein. *Albany Land Co.* v. *Rickel* (1904), 162 Ind. 222.

The sixth interrogatory was immaterial, and if it had been answered in favor of appellant it would have exercised no influence over the case. The seventh was improp-

9. erly framed, because it assumed that appellee sold the stock in his own name to Wilson.

Appellant offered to prove at the trial that on July 18, 1905, at the Claypool hotel, in the city of Indianapolis, he met the appellee and proposed to him to sell him the

10. 4,262 shares of common stock which he owned in the Indianapolis & Northwestern Traction Company; that on July 19, 1905, appellee asked the appellant for an option upon his stock, and appellant said he would give him an option upon it. This evidence, upon the objections of appellee, was excluded, and this ruling is urged as error. The evidence was evidently offered for the purpose of rebutting or breaking down that given by appellee to establish his employment by appellant as his agent to sell the

stock.    While it is true that the conversation which appellant offered to prove was in regard to the same stock, nevertheless it took place seventeen or eighteen days after the dealings or transactions involved in this case had been closed, and after appellee had notified appellant that he would hold him responsible for all damages sustained or liabilities incurred by reason of his failure to make delivery of the stock on July 1.    It was in reference to an entirely different and new transaction, and in no manner did it tend to disprove or rebut the testimony given by appellee at the trial.    Had appellee, during the pendency of the transaction involved in this case, requested appellant to give him an option upon the stock in question, then and in that case the evidence offered might have been competent.

Appellant criticises as erroneous the third, fourth and fifth instructions as given by the court.    These instructions are strictly in harmony with the principles of the law which we announce and adhere to in this case, and they each properly advised the jury in respect to the law applicable to the facts in the case.

The instructions requested by appellant were refused. This ruling was right (1) because said instructions were not correct expressions of the law; (2) they were not applicable to any evidence in the case.

We have considered all the questions raised and presented by counsel for appellant, but do not deem it essential that we specifically mention all of them.    It is sufficient to say that, upon the consideration of all the questions properly presented by the record, we find no available or reversible error.    Consequently the judgment is affirmed.