## SPENCER ET AL. *v.* McGUFFIN.

[No. 23,460.   Filed March 29, 1921.]

1. FRAUDS, STATUTE OF.—*Scope.*—*Contract for Sale of Corporation Stock for a Consideration in Excess of $50.*—A contract purporting to bind certain owners of corporate stock, for a consideration in excess of $50 to convey to the corporation certain common and preferred stock, and to bind another to subscribe and pay for a certain amount of common stock, is within §7469 Burns 1914, §4910 R. S. 1881, requiring contracts "for the sale of any goods," for the price of $50 or more, to be in writing and such contract must be in writing to be inforceable.   (*Vawter* v. *Griffin* [1872], 40 Ind. 593, explained.) p. 314.

2. CONTRACTS.—*Breach.*—*Action.*—*Necessary Parties.*—Where parties have jointly stipulated for a single consideration, without any provision as to how it is to be distributed among them, to surrender jointly a gross amount of capital stock, the court will not undertake to say, from facts outside the contract, that one of the joint contracting parties is entitled to a specified share of the damages recoverable for breach thereof, and to adjudge that share to him separately, when the other parties who joined in the contract are not before the court.   p. 318.

3. CONTRACTS.—Breach.—Action.—Necessary Parties.—Where two or more parties to a contract will have a common interest in the damages for its breach, and their respective interests in severalty are not fixed and determined by the contract, but must be ascertained from a consideration of their respective interests as established by the proof, they must join as plaintiffs. p. 320.

4. CONTRACTS.—Breach.—Action.—Necessary Parties.—The mere fact that plaintiff alleged that he owned a certain proportion of the common stock to be conveyed, and was to have a like proportion of the agreed consideration, and therefore sustained that proportion of the alleged damages for breach of contract for its sale, executed jointly by plaintiff and others, will not enable the court to so adjudge, without having before it the parties who joined plaintiff in the contract, where such contract merely bound the coparties jointly to convey a specified amount of stock to the corporation, and bound defendants to purchase a certain amount of the stock for a single gross sum. p. 321.

5. CONTRACTS.—Action for Breach.—Complaint.—Tender and Demand.—Motion to Make More Specific.—In an action for breach of an oral contract for the sale of corporate stock, where the contract is not alleged to have provided that performance by defendant purchasers should precede the acts stipulated to be done by plaintiff and those joining with him in the contract, nor to have fixed the time in which defendants should perform, averments of a tender of performance prior to bringing a suit for breach were necessary; and where the allegations of such a tender and demand are unsatisfactory, the complaint would be subject to a motion to make more specific. p. 321.

From Wabash Circuit Court; A. W. McCracken, Special Judge.

Action by John B. McGuffin against Robert J. Spencer and others. From a judgment for plaintiff, the defendants appeal. Reversed.

O. L. Cline, H. J. Paulus, Warren G. Sayre and Condo & Browne, for appellants.

Meade S. Hays, Griffith D. Dean and Plummer, Todd & Plummer, for appellee.

EWBANK, J.—This was an action by the appellee to recover damages for the breach by appellants of an oral

agreement alleged to have been entered into with the appellee and three other persons, who owned stock in the O. H. Keller Chair Company, to the effect that appellee and the other stockholders should surrender all of the preferred stock ($1,700) and $52,324.54 of the common stock in said company, and that appellee would thereupon subscribe and pay for at its par value $7,675.46 of such common stock, being an amount equal to all of the common stock in said corporation to be retained by the appellee and his three fellow owners of the stock.

The complaint alleged that the O. H. Keller Chair Company had a paid-up common capital stock of $60,000, divided into shares of $100 each, and of these appellee owned $52,300, his wife, Ada McGuffin, $100, Oscar F. Cole, $100, and Andrew Jackson, $7,500, and that said Ada W. McGuffin also owned $1,700 of preferred stock in the corporation, being all there was of it; and that after the appellee and the other three stockholders, as the first parties, and appellants as the second parties, had executed a written option contract, giving to appellants the privilege of acquiring a half interest in the corporation by subscribing or purchasing and paying for, at par, an amount of stock equal to the sum in which the value of the tangible property of the corporation, as shown by an inventory, should exceed the amount of the corporation debts, and that after the inventory had been taken, and had disclosed that the tangible assets were $33,676.46, and that the debts owing to others than appellee and his wife amounted to $26,100, and after the parties to said option contract had examined the statement and inventory above mentioned, said defendants thereupon did not act upon the written option, but orally agreed with said first parties that if the first parties would surrender to said company all of its common capital stock then owned by

them, except $7,675.46, at its par value, and if said John
B. McGuffin would cancel the indebtedness owing to him
from said company, and said Ada McGuffin would sur-
render the $1,700 of preferred stock she then owned in
the company, said defendants would at once purchase of
the company at its par value $7,675.46 in full of such
common stock so surrendered to the company by said
first parties, and would pay therefor in cash to the chair
company the sum of $7,675.46, and the present directors
of the company were then to resign, and the said de-
fendants and the first parties would at once elect as
directors of said company John B. McGuffin, Robert J.
Spencer and Frank C. Lenfesty, and that said directors
would pay to said John B. McGuffin for his services the
sum of $100 per month. That thereupon the first
parties agreed to accept the offer of said defendants,
and agreed that, in consideration of said agreement of
defendants, they would purchase said stock, then the
first parties would surrender to the company all of its
common stock, except the said sum of $7,675.46 at its
par value, and said John B. McGuffin agreed that he
would cancel his said indebtedness, and said Ada Mc-
Guffin agreed that she would surrender to the company
the $1,700 of preferred stock she then owned, and the
contract above mentioned was thereupon entered into
by all of said first parties on the one part and the de-
fendants on the other, and it was thereupon expressly
agreed by the first parties, in consideration of the agree-
ments of the said defendants to purchase the said
$7,675.46 of the said common stock, that the first parties
would surrender all of their common stock, except the
sum of $7,675.46, to the company, and said John B.
McGuffin thereupon agreed that he would cancel his in-
debtedness against the company, and said Ada McGuffin
thereupon agreed that she would surrender the $1,700
of preferred stock she held in said company, and ap-

pellants agreed that they would purchase at its par value $7,675.46 of the capital stock and pay said amount to the company for the same, and it was agreed by all the said parties that all of the directors of the company should resign, and that appellants and appellee should be chosen as directors, and appellee should receive $100 per month.

The complaint alleged that appellee and his fellow stockholders thereafter notified appellants that they were ready and willing to surrender to the company all of the common stock in excess of $7,675.46, and appellee offered to and notified appellants that he was ready and willing to cancel all debts which the company owed him, and appellee's wife notified them that she was ready and willing and offered to surrender to the company the preferred stock held by her, and all the first parties were ready and willing to do and perform all things agreed to be done and performed by them in carrying out said agreement, and so notified the defendants, and at all times have been ready, and now are ready, and willing to carry out their part of the agreement, "but that the defendants (appellants) at all times   *   *   * have refused and still refuse to carry out their part of said contract and agreement or any part thereof, and notified the plaintiffs and all the other of said first parties and they would not carry out the same." It further alleged that the appellants procured certain creditors of said company to bring suit to collect their demands and for a receiver, and then promised and agreed with appellee "and all other of said first parties" that they would cause a receiver to be appointed, and that while the receivership was pending appellants would carry out their agreement to so purchase the stock, and thereafter would cause the receiver to be discharged.

But it is alleged that appellants procured an order for the sale of all of the property of said company under which it was all sold by the receiver for $18,250, and was purchased by appellant Spencer, who organized a corporation in which he owned the controlling interest, which acquired such property, and that the good will of the property of the corporation was worth $25,000, besides the tangible property inventoried at $7,687.46 more than the amount of the company's debts. And the conclusion was stated that, if appellants "had purchased said stock as agreed by them," appellee would have owned stock of the par value of $6,863.94, "besides the good will," and that because of the receiver's sale he "lost his entire property in all of the stock, property and assets of the chair company." There was no allegation that the option in writing was ever accepted, but the complaint is based only on the alleged oral contract.

A demurrer to the complaint on the alleged grounds that there was a defect of parties plaintiff, in that the other three alleged holders of stock who joined appellee in making the contract pleaded should be joined, and that the complaint did not state facts sufficient to constitute a cause of action, was filed by each of the appellants, but was overruled and appellants excepted. An answer of denial was filed and the cause was submitted to a jury. After numerous exceptions to the admission of items of evidence had been reserved, as well as many exceptions to the giving and refusal of instructions, the jury returned a verdict in favor of the appellee for $9,863.63, on which judgment was rendered. Appellants each separately moved for a new trial, specifying as errors the admission of each of such items of evidence, the giving of each of twelve instructions, and the refusal to give each of six instructions requested by appellants. The motion was overruled and appellants excepted, and have each assigned as error

the overruling of their demurrers to the complaint, and the overruling of their motions for a new trial.

· The objection first urged against the complaint is, that it counts upon an oral contract for the sale of capital stock of a corporation of value greatly exceeding $50. And it is urged that the statute (§7469 Burns 1914, §4910 R. S. 1881) controls which declares that "no contract for the sale of any goods, for the price of fifty dollars or more shall be valid," where none of the property is received and no part payment is made, "unless some note or memorandum in writing of the bargain be made, and signed," etc. Many authorities support this contention. 25 R. C. L. 616, §230; 20 Cyc 244; 4 Thompson, Corporations (2d ed.) §4116; 2 Cook, Corporations (7th ed.) §339.

An examination of the cases cited in support of the proposition, and of the laws of the states in which they were decided, shows that many of them are based upon statutes which expressly require that sales of "personal property" or of "things in action" for a designated price shall be evidenced by a writing, as well as all such sales of "goods." *Tomkins* v. *Sheehan* (1899), 158 N. Y. 617, 53 N. E. 502; §1739 Cal. Civil Code; §6009 Idaho Rev. Code; 1 Colorado Mills Ann. Stat., §2025; *Franklin* v. *Motoa, etc., Co.* (1907), 158 Fed. 941, 86 C. C. A. 145, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302; *Snow Storm Mining Co.* v. *Johnson* (1911), 186 Fed. 745, 751, 108 C. C. A. 615; *Spear* v. *Bach* (1892), 82 Wis. 192, 52 N. W. 97; *Southern, etc., Trust Co.* v. *Cole* (1852), 4 Fla. 359, 378; Massachusetts Acts 1908, Ch. 237, §4; Connecticut Gen. Stat. 1902, §1090, (1918, §6131); *De Nunzio* v. *De Nunzio* (1916), 90 Conn. 342, 97 Atl. 323; *Laundry, etc., Co.* v. *Whitmer* (1915), 92 Ohio St. 44, 51, 110 N. E. 518, Ann. Cas. 1917C 988; §2308 Wisconsin Stat. 1913; §857 S. D. Rev. Code 1919. But many cases have directly decided that such statutes

relating to the sale of "goods" applied to contracts for the sale of stock in corporations. *Tisdale* v. *Harris* (1838), 37 Mass. (20 Pick.) 9; *Baltzen* v. *Nicolay* (1873), 53 N. Y. 467; *North* v. *Forest* (1843), 15 Conn. 400; *Ford* v. *Howgate* (1910), 106 Me. 517, 76 Atl. 939, 29 L. R. A. (N. S.) 734; *Sprague* v. *Hosie* (1908), 155 Mich. 30, 118 N. W. 497, 19 L. R. A. (N. S.) 874, 130 Am. St. 558; *Russell* v. *Betts* (1913), 107 Ark. 629, 156 S. W. 457; *Hightower* v. *Ansley* (1906), 126 Ga. 8, 54 S. E. 939, 7 Ann. Cas. 927; *Benner* v. *Billings* (1919), 107 Wash. 1, 181 Pac. 19; *Colvin* v. *Williams* (1810), 3 Har. & J. (Md.) 38, 5 Am. Dec. 417 (overruled by *Webb* v. *Baltimore, etc., R. Co., infra*).

Some courts have held that shares of stock not yet issued are "goods," and that contracts for the sale of such stock are within the Statute of Frauds. *Hightower* v. *Ansley, supra; Seaman* v. *Sweat* (1918), 22 Ga. App. 92, 95 S. E. 378; *Hewson* v. *Peterman Mfg. Co.* (1913), 76 Wash. 600, 602, 136 Pac. 1158, 51 L. R. A. (N. S.) 398, Ann. Cas. 1915D 346.

Though many courts, including some which have held that shares of stock are "goods," declare that unissued stock is not, and that a subscription for stock or a contract to purchase stock not yet issued need not be in writing if the statute does not mention "things in action," nor "personal property," but only enumerates "goods, wares and merchandise." *Meehan* v. *Sharp* (1890), 151 Mass. 564, 24 N. E. 907; *Peninsula Leasing Co.* v. *Cody* (1910), 161 Mich. 604, 126 N. W. 1053; *Clapp* v. *Gilt Edge, etc., Co.* (1913), 33 S. D. 123, 144 N. W. 721; *Clement* v. *Rowe* (1914), 33 S. D. 499, 146 N. W. 700; *Gadsden* v. *Lance* (1841), 1 McMullen's Eq. (S. C.) 87, 37 Am. Dec. 548; *Webb* v. *Baltimore, etc., R. Co.* (1893), 77 Md. 92, 26 Atl. 113, 39 Am. St. 396; *Colfax Hotel Co.* v. *Lyon* (1886), 69 Iowa 683, 29 N. W. 780; *Rogers* v. *Burr* (1898), 105 Ga. 432, 31 S. E. 438,

70 Am. St. 50 (since overruled by *Hightower* v. *Ansley, supra*).

While other courts have argued that there is no difference between stock already issued and unissued shares merely subscribed for or agreed to be subscribed for in the future. *Hewson* v. *Peterman Mfg. Co., supra.*

The courts of England for more than eighty years past, following the decision, in 1839, of the case of *Humble* v̇. *Mitchell* (1839), 11 Ad. & El. 205, have uniformly held that the words "goods, wares and merchandise," as used in Stat. 29 Car. 2, ch. 3 (1677), commonly called the English Statute of Frauds, does not embrace shares of stock in corporations, because they are "mere choses in action incapable of delivery," and therefore that sales of such shares are not within the statute. 25 R. C. L. 616, §230; 20 Cyc 244; 29 Am. and Eng. Ency. Law (2d ed.) 961; 7 Am. and Eng. Ann. Cas. 930 (note) ; 19 L. R. A. (N. S.) 874 (note).

But in America there never has been a reported decision of a court of last resort, of which we have knowledge, holding that sales of stock that has been actually issued are not within the statute. Besides the courts which have held that unissued shares of stock merely subscribed for or to be subscribed for in the future are not within the statute, others have decided that contracts for the sale and transfer of mere debts and evidences of debt, such as accounts and promissory notes, are not within the statute. And some of the courts, in announcing their decisions as to sales of notes and other debts, and some in declaring the rule as to stock not yet issued, have referred to the English decisions, and used *dicta* to the effect that contracts for the sale of shares of stock are not within the statute. *Vawter* v. *Griffin* (1872), 40 Ind. 593, 602; *Whittemore* v. *Gibbs* (1852), 24 N. H. 484; *Webb* v. *Baltimore, etc., R. Co., supra;*

*Rogers* v. *Burr, supra* (overruled by *Hightower* v. *Ansley, supra*).

The appellee cites and relies upon *Vawter* v. *Griffin, supra,* as deciding that a contract for the sale of shares of the capital stock of a corporation need not be in writing. The question before the court in that case was, whether or not an alleged oral agreement between the plaintiff and the principal and surety on a note that, for a consideration, an open account due from the plaintiff to such surety should be applied as a payment on the note and accepted by the plaintiff in discharge of the note *pro tanto,* was binding and could be established by parol evidence. The decision of the court that it was binding and could be so established was summed up by the court as follows: "We are very clearly of the opinion that contracts for the sale of evidences of debt and things in action are not within the seventh section of our statute of frauds." *Vawter* v. *Griffin, supra.*

But by way of argument, before reaching this conclusion, Judge Buskirk said that, having borrowed our Statute of Frauds from the English statute, we may very properly adopt and be governed by the construction placed thereon by the English courts and text-writers, and that "it is well settled in England that contracts for the sale of shares or stocks, notes, checks, bonds, and evidences of value are not within the seventeenth section of the statute of Charles II"—citing numerous English authorities. *Vawter* v. *Griffin, supra.*

The other cases cited by appellee are clearly distinguishable from the case at bar, one of them applying to a contract which had been fully performed by the plaintiff, and which, as the court said, did not relate to a sale of anything at any price and had no reference to shares of stock at all; and the other being an action by an agent for a commission for negotiating a sale, in which the court said that, "were it conceded that the

sale in controversy was subject to the statute of frauds, nevertheless appellee could not invoke the statute to defeat the payment of appellant's commission." *Hinkle* v. *Fisher* (1885), 104 Ind. 84, 87, 3 N. E. 624; *Reed* v. *Light* (1908), 170 Ind. 550, 556, 85 N. E. 9.

In a recent case decided by the Appellate Court of Indiana the appellant had contracted in writing, duly signed by himself, that for a consideration which he thereafter received he would purchase certain shares of stock from the appellee at a price fixed, if notified by a certain date. In an action on this contract the trial court instructed the jury that the contract, being for the sale of shares of stock for a price in excess of $50, was under the Statute of Frauds required to be in writing, and could not be varied by parol. A judgment awarding damages for breach of the written contract was affirmed, and the court, after reviewing the authorities, said that the overwhelming weight of authorities supported the rule declared by the instructions given, and declined to follow the dictum in *Vawter* v. *Griffin*, *supra.* *Culp* v. *Holbrook* (1920), 76 Ind. App. 272, 129 N. E. 278, 280.

The alleged contract sued on purported to bind the appellee and his associates, for a consideration named, greatly in excess of $50, to convey to the O. H. Keller Chair Company $52,324.54 par value of the common stock of said company, and $1,700 par value of its preferred stock, and to bind appellants to purchase certain shares of that stock for the price of $7,675.46 to be paid by appellants. The complaint was clearly insufficient for lack of an allegation that the contract was in writing.

Appellee and his wife and two other persons are referred to throughout the complaint as the "first

2.    parties." The alleged contract sued on stipulated that the "first parties would surrender to said

company all of its common capital stock then owned by them except $7,675.46," and that in consideration of their doing so, and of certain further acts to be done by appellee and his wife, and by the corporation itself, appellants would purchase, for cash, at its par value, $7,675.46 of the common stock. The only visible inducement for the "first parties," other than appellee, to make this contract was the preservation and increase of the value of whatever stock they would still own after the contract should be performed.

There was no stipulation as to how many shares any one or another of the "first parties" should turn over to the corporation, nor how many each or either should retain, nor that each or any of them should receive a stipulated part of the consideration. Neither did the alleged contract stipulate that each separately owned shares in which the others had no interest, nor what proportion of the shares each owned. All of the four joined in an agreement to turn back to the corporation all the outstanding common stock but $7,675.46 par value, being a total of $52,324.54 par value to be so turned back, or about seven-eighths of all the stock. This would call for 523 (and a fraction) shares of $100 each to be turned over to the corporation.

The complaint alleges that each of the four "first parties" owned separate shares in unequal amounts of the common stock, and that two of them owned only one share each. And in addition to the surrender by the four "first parties" of said amount of common stock, one of them (appellee's wife), who is alleged to have owned a single share of common stock, was bound by the contract to surrender preferred stock of the par value of $1,700 which belonged to her, and there was no special provision as to what consideration she should receive for it.

If the provisions of the contract made it clear just

what part of the consideration each of the four "first parties" was to receive, so that the court could know with certainty that each was interested only in his separate share of the consideration and had no common interest with the others in the contract, there might be ground for claiming that each could sue separately to recover his separate damages for its breach. *McIntosh* v. *Zaring* (1898), 150 Ind. 301, 305, 49 N. E. 164; *Brownell* v. *Irwin* (1900), 25 Ind. App. 395, 58 N. E. 263.

But where the parties have jointly stipulated for a single consideration, without any provision as to how it is to be distributed among or enjoyed by them, when received, for which they have engaged jointly to surrender a gross amount of capital stock, the court will not undertake to say, from facts outside of the contract, that one of the joint contracting parties is entitled to a specified share of the damages recoverable for breach of the contract, and to adjudge that share to him separately, when the other parties who joined in the contract are not before the court. *Larsen* v. *Groeschel* (1884), 98 Ind. 160, 162.

3. If two or more parties to a contract will have a common interest in the damages to be recovered for its breach, and their respective interests in severalty are not fixed and determined by the contract, but must be determined from a consideration of their respective interests in and relations to the subject-matter of the contract as established by proof, they must join as plaintiffs. §§263, 270 Burns 1914, §§262, 269 R. S. 1881; *Tate* v. *Ohio, etc., R. Co.* (1858), 10 Ind. 174, 71 Am. Dec. 309; *Young* v. *Board* (1865), 25 Ind. 295, 299, 300; *Larsen* v. *Groeschel, supra; Judy* v. *Jester* (1912), 53 Ind. App. 74, 85, 100 N. E. 15; *Cressler* v. *Brewer* (1916), 186 Ind. 185, 114 N. E. 449;

*Shira* v. *State, ex rel.* (1918), 187 Ind. 441, 444, 119 N. E. 833.

And the mere fact that appellee alleged that he owned a certain proportion of the common stock and was to have a like proportion of the agreed considera-

4. tion, and therefore sustained that proportion of the alleged damages for breach of the contract, will not enable a court to so adjudge without having before it the parties who joined him in executing the contract, where the contract itself merely bound him and his coparties jointly to convey a specified amount of stock to the corporation and bound defendants to purchase a certain amount of that stock and to pay a single gross sum of money for it, but where such contract did not suggest that any of the parties had a separate interest in the stock to be so assigned, nor in the consideration to be received, nor what appellee's share of such consideration would be. The complaint was insufficient by reason of a defect of parties plaintiff.

The complaint does not allege full performance by the plaintiff and the other "first parties." And as the oral contract is not alleged to have provided that

5. performance by the appellants should precede the acts stipulated to be done by appellee and his coparties, nor to have fixed a time within which appellants should perform the contract, averments of a tender of performance by plaintiffs, before bringing suit, were necessary to make the complaint good. The allegations of such a tender and demand are far from satisfactory, and if sufficient to withstand a demurrer would only be so by reason of what is implied from the alleged refusal of appellants when "notified" that the other parties to the contract were ready and willing to perform on their part. The complaint would clearly be

subject to a motion to make more specific in this particular and ought to be amended.

Since the issues must be changed before the case is tried again, we do not deem it necessary to consider the questions arising upon the motion for a new trial, and as to them we decide nothing, except as they are embraced by what has been said.

For the error in overruling the demurrer to the complaint the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Townsend, J., absent.