## FARNI *vs.* TESSON.

1. .Where a contract is joint, and not several, all the obligees who are alive must be joined as plaintiffs.

. 2. If one of the joint obligees be dead, a suggestion of that fact is suffi-. cient to show a right to sue in the names of the survivors.

3. If by the condition of a bond the money to be recovered be not for the joint benefit of all the obligees, the suggestion of that fact can- not alter the obligation; but all the parties having a legal title to recover must join in the suit, and the judgment will be for the use of the party named in the condition and equitably entitled to the money.

4. The rule is that a covenant may be construed as joint or several ac- cording to the interests of the parties appearing upon the face of the obligation, *if the words are capable of such a construction,* but it will not be construed as several by reason of several interests if it be expressly joint.

5. Where some of the obligees of a bond.who should be joined as plain- tiffs in a suit brought upon it are omitted in order to give jurisdic- tion in the case to a Federal court, such a reason, even if alleged in the pleading, would not cure the omission.

. 6. A defendant can object to a non-joinder of plaintiffs, not only by de- murrer, but under the plea of the general issue, or on motion to arrest the judgment.

Error to the Circuit Court of the United States for the north- ern district of Illinois.

Tesson & Dangen recovered a judgment against Bontcum and Carrey in the Circuit Court of Peoria county, Illinois, on the 12th of September, 1857, for $8,000. On the same day an execution was issued directed to Woodford county, and a levy was soon after made on real and personal property. Bontcum and Carrey filed a bill on the equity side of the court for an injunction to stop further proceedings under the judgment, and the injunction was directed to issue according to the prayer of the bill, "upon the complainants entering into bond in the penal sum of sixteen thousand dollars with Christian Farni and Peter Farni, conditioned according to law." A bond was accordingly

executed, in which the two Farnis with Bontcum and Carrey were the obligors, and Tesson, Dangen, Tuber, Garesche, and Miner the obligees. This bond, it was conceded, was not framed in accordance with the order of the court, but upon its being filed the injunction was issued. Afterwards the plaintiffs, perceiving the insufficiency of their bond, had a new one executed, to which the parties were the same as to the former one; but the conditions were different. This bond was filed by the clerk of the court without the authority of the court and without the knowledge of the defendants in the bill, who on discovering the fact moved to dissolve the injunction, because no sufficient bond had been filed *prior to the issuing of the writ.* The plaintiffs afterwards moved for leave to file a new bond; but no action was taken upon their motion, and in October, 1858, the injunction was dissolved, and after some time they dismissed their bill. At December term, 1858, Tesson brought suit on the second injunction bond against Christian and Peter Farni in the Circuit Court of the United States for the northern district of Illinois. The suit was brought in his own name as surviving partner of the firm of Tesson & Dangen, omitting as plaintiffs the other three obligees to whom the bond had been given; and making only two of the four obligors who executed it defendants. To avoid the objection of non-joinder of the other obligees the plaintiff averred that he was the only one interested in the judgment enjoined; that Miner, one of the obligees, was the sheriff who held the execution enjoined, and the other obligees were merely the agents or trustees of Tesson. The defendants demurred to the declaration, and the plaintiff amended it; but the names of the parties to the action were the same in the amended as in the first declaration, and the averments of their several and separate interests in the bond remained unchanged. To this amended declaration the defendants, in accordance with a stipulation they had made to plead to the merits, on the 26th of February, 1859, filed their plea of *non est factum,* with an affidavit that the writing sued on was never delivered by them. Replication was filed to this plea and issue upon it to the country, and a verdict and judgment rendered in favor of the plaintiff. The defendants ex-

*Farni* vs. *Tesson.*

cepted to the instructions given by the court to the jury, which related, however, to points not touched on in the opinion of the Supreme Court. Before signing the bill of exceptions the judge put on record a written explanation to the effect that the objection to the non-joinder of the proper parties, though made by the defendants on the trial, had been understood by the court to have been waived, and was only pressed upon a motion made to arrest judgment, when it was overruled as merely technical. This overruled objection is the only matter in the record to which the opinion of the Supreme Court was addressed, and it has seemed necessary to state only such of the facts as form a necessary introduction to that opinion. The defendants sued out this writ of error.

*Mr. Fuller,* of Illinois, and *Mr. Carlisle,* of Washington, for plaintiff in error. The bond on which this action was brought was a joint undertaking by four persons to pay five others jointly the sum of $17,000. Two of the obligees were the plaintiffs in the judgment enjoined; two others were agents or trustees for them; and the fifth was the sheriff, who had the execution enjoined.

The sheriff, Miner, one of the obligees, was a citizen of Illinois, of the same State as the defendants in this case; so the plaintiff avers, and so the fact was. This contrivance in pleading was therefore resorted to to support the jurisdiction of the United States court; for, if the suit had been brought in the name of all the obligees, it must have failed, because one of the plaintiffs, Miner, would have been a citizen of the same State with the defendants. Can this pleading be supported by the authorities? It must be kept in mind that this is an action of debt on the penalty of the bond, and that all the authorities make a wide distinction between this form of action and one of covenant upon the undertakings in the conditional part of the obligation, and most, if not all, the cases turn on this distinction. Keeping this in mind, we refer to 1 Williams Saunders, 291, 1st Am. Ed., (*Cabell* vs. *Vaughan,*) where it is said " all the obligees or covenantees, if alive, ought to join in the action; if dead, that fact should be averred." The plaintiff

in this case averred in substance that the obligees not joined were still alive. 1 Chitty's Pleadings, 9; 1 Saunders' Pl. & Ev., 9; *Pearce* vs. *Hitchcock*, (2 Comstock, 388;) *Arnold et al.* vs. *Talmadge*, (19 Wendell, 527;) *Bailey* vs. *Powell*, (11 Missouri, 414;) *Sims & Hollis* vs. *Harris*, (8 B. Monroe, 55;) *Gayle et al.* vs. *Martin*, (3 Alabama, 593.) This defect of parties may be taken advantage of by demurrer, plea in abatement, objection at the trial, motion in arrest of judgment, or by writ of error. 1 Chitty's Pleadings, 12 *a; Cabell* vs. *Vaughan*, (1 Saund. Rep., 291.)

The plaintiff filed a declaration, which was demurred to. He then amended by filing two new counts, to which the defendants stipulated that they would plead to the merits, (and this was all the answer they ever made to it.) They did plead to the merits; at the trial, insisted on the objection. The judge overruled it then—overruled the motion in arrest, because he thought the objection too technical to be sustained; yet the authorities all say that the objection was a good one at any stage of the proceedings, and ought to prevail when insisted on. There is no surprise to plaintiff in this, for he has deliberately taken the hazard of trusting that the court would disregard long and well-settled rules of common law pleading, in order to extend the jurisdiction of the Federal courts.

*Mr. Vinton,* of Washington city, for defendant in error. It has been a rule of practice from an early period of the common law that covenantees may sue separately in covenant, if the interest and cause of action be several, though the covenant be in terms joint; but if an action of debt be brought on the same obligation to recover the penalty for breach of covenant, all the obligees must join in the suit. 1 Chitty's Plead., 3, 6, and 7; *Eccleston* vs. *Clepsham*, (1 Saund., 153, and note 1.)

The inquiry naturally presents itself, why was this distinction in the rule of practice where the suit is on the same instrument?

When debt was brought to recover the penalty of the bond, the severe rule of the common law gave judgment for the whole penalty according to the letter of the obligation, and

not only shut out all inquiry into the damage which the ob-, ligee had sustained, but provided for the obligor no relief in any other form. And so great was this hardship of the common law that the court of equity made relief in such cases one of its special grounds of jurisdiction, which directed an issue of *quantum damnificatus,* and enjoined the excess of the judgment beyond the damage actually sustained. 2 Selwin N. P.; 517.

If the obligee by his action of debt claimed the penalty of the bond according to its letter, it was but just that he, too, should be held to its letter, and compelled, though his interest were separate, to sue in the names of all the obligees. But if he brought covenant on his obligation, he recovered such damages only as he had actually sustained; and as he thus relaxed his hold upon the letter of the bond, the rule of practice was relaxed also in his favor by allowing him to sue separately, if his interest and cause of action were separate, though the terms of the obligation were joint. The law remained on this footing until the passage of the statute of the 8 and 9 William III, ch. 11, sec. 8; which enabled the obligor to compel the obligee in an action of debt on the penalty to assign the breaches of the condition of the bond, and limited his recovery to the damage actually sustained.

Since the passage of that statute, the action of debt on a penal bond is virtually put on the same footing with the action of covenant on the obligation. The result of an action on a penal bond, whether debt or covenant be brought, is now substantially the same to both parties in the suit. The English statute on this subject has been everywhere adopted in this country, and the record of this case shows that the plaintiff assigned the breaches of the condition of the bond, and recovered what was equitably due him, being some seven thousand three hundred and odd dollars. When the reason for this distinction in the rule of practice ceased to exist, the distinction itself ought also to have ceased.

But a conclusive answer to this objection to the non-joinder of proper parties to the suit is, that it was waived by the plaintiffs in error in the court below. He who remains silent when

it is his duty and interest to speak, will not be allowed to speak afterwards to the prejudice of another. Having remained silent, then, the defendants had no right to make the objection on motion to arrest the judgment, nor to insist upon it in this court as a ground of error to reverse the judgment. The stipulation to plead to the merits was plainly an agreement to waive the objection of want of parties as a defence to the suit, and not, as is claimed by the plaintiffs in error, an agreement not to avail themselves of this defence in a particular form only, such as by demurrer to the declaration or plea in abatement.

Mr. Justice GRIER. The amendments made to the declaration after demurrer have not removed the original mistake, as to the parties who should have been joined as plaintiffs. In an action of debt on bond, the demand is for the penalty. The condition of the bond is no part of the obligation. It is true, the judgment for the penalty will be released, on performance of the condition annexed to it. The plaintiff may declare on it as single, and defendant would then have to pray oyer of the deed, and have the condition put on the record, so that he could plead a performance of it, or any other defence founded on it. The bond being set forth at length in the declaration, precluded the necessity of oyer, but did not relieve the pleader from the mistake patent in his plea. He sues on a several covenant to pay a sum of money to A, and shows a covenant to pay A B and C jointly. If one of the joint covenantees be dead, a suggestion of that fact is sufficient to show a right to sue in the names of the survivors. If, by the condition, the money to be recovered be not for the joint benefit of all, the suggestion of that fact cannot alter the obligation; but will show only that, though all the parties to it should join in the suit, and show a legal title to recover, the judgment will be for the use of the party named in the condition, and equitably entitled to the money. The true reason for the course pursued by the pleader in this case, though not alleged in the pleading, was, perhaps, to give jurisdiction to the Circuit Court of the United States, by omitting the names of obligees who are citizens of Illinois. But it is admitted that such a

reason, even if alleged in the pleading, would not have cured the omission.

It is an elemental principle of the common law, that where a contract is joint and not several, all the joint obligees who are alive must be joined as plaintiffs, and that the defendant can object to a non-joinder of plaintiffs, not only by demurrer but in arrest of judgment, under the plea of the general issue.

When there are several covenants by the obligors, as, for instance, to "pay $300 to A and B, viz: to A $100, and B $200," no doubt each may sue alone on his several covenant. The true rule, as stated by Baron Parke, is, that "a covenant may be construed to be joint or several, according to the interests of the parties appearing upon the face of the obligation, if *the words are capable of such a construction;* but it will not be construed to be several, by reason of several interests, if it be expressly joint." In this case, the covenant is joint, and will admit of no construction. The condition annexed cannot affect the plain words of the obligation.

It has not been denied on the argument that such is the established rule of the law, and such the plain construction of the bond; but it is insisted, that the court should disregard it as merely a *technical* rule, which does not affect the merits of the controversy. The same reason would require the court to reject all rules of pleading. These rules are founded on sound reason, and long experience of their benefits.

It is no wrong or hardship to suitors who come to the courts for a remedy, to be required to do it in the mode established by the law. State legislatures may substitute, by codes, the whims of sciolists and inventors for the experience and wisdom of ages; but the success of these experiments is not such as to allure the court to follow their example. If any one should be curious on this subject, the cases of *Randon* vs. *Toby,* (11 How., 517;) of *Bennet* vs. *Butterworth,* (ib., 667;) of *McFaul* vs. *Ramsey,* (20 How., 523;) and *Green* vs. *Custard,* (23 How., 484,) may be consulted.

*The judgment of the Circuit Court is therefore reversed, with costs.*