McNamee & Eckels *vs.* Withers & Gordon.

(Decided 19th December, 1872.)

HENRY J. MCNAMEE and SAMUEL ECKELS *vs.* ADDISON L. WITHERS and JOSIAH H. GORDON.

*Equity Practice— When Compensation for Valuable Improvements made on the land of another will be decreed—Specific performance of an Agreement.*

If one person expends his money in making beneficial improvements on the land of another, upon the faith of a parol contract by the latter to convey, and specific execution of the contract cannot be decreed, because of the uncer-

tainty in the proof of its terms, a Court of Equity will decree compensation to the extent of the value of such improvements, and in some cases will grant relief by declaring the same to be an equitable lien upon the property.

M., who had married a daughter of E., built a dwelling house on the lot of E. at their joint expense, under an agreement or understanding between them, that when the house was completed, the property should be conveyed to the wife of M. After the house was completed, in 1846, E. procured a deed to be prepared conveying the property to the wife of M. and her heirs; this deed was never executed, M. objecting to it, and desiring it to be made to himself. M. received the rents and profits of the house; and in 1852 he mortgaged the property to W. The wife of M. was not a party to the mortgage. Some years after the execution of the mortgage, M. took the benefit of the insolvent laws. Upon a bill filed by W. to have the nature and extent of the interest of M. in the premises declared, and such interest made available for the satisfaction of the complainant's mortgage, it was HELD:

1st. That the complainant was not entitled to the relief sought, having failed to show that it was agreed or understood between E. and M., either that the property in question was to be conveyed to the latter, or that he was to have some interest or estate therein in his own right, or that it was to be in some manner possessed and owned by him; and that upon the faith of such agreement or understanding M. was induced to expend his money in erecting the house.

2nd. That the wife of M. was entitled to claim the benefit of the agreement made between him and E., and to have the same specifically performed, by a conveyance to her of the property.

3rd. That neither the complainant as mortgagee, nor the creditors of M. had any claim as against his wife, to have the property sold to pay his debts.

APPEAL from the Circuit Court for Allegany County, in Equity.

The bill of complaint in this case was filed by Addison L. Withers against Henry J. McNamee, Samuel Eckels and Josiah H. Gordon. The bill stated that McNamee on the 15th of January, 1852, being indebted to the complainant in the sum of $1,100, executed a mortgage to Withers on a lot of ground in the town of Cumberland; that although the time limited for the payment of said

sum had passed, and demand had been made therefor, no part had been paid. but the whole of said sum with interest remained due to the complainant; that long before and at the time of the execution of the mortgage, the said McNamee was in possession of the real estate thereby conveyed, claiming the same, and receiving and enjoying the rents and profits thereof; that several years prior to the execution of the mortgage, McNamee had erected on said lot of ground a valuable brick dwelling house, and made other valuable improvements on the same; that long before the erection of said building, McNamee had married a daughter of one Samuel Eckels of Allegany County; that one William P. Beall of said County had also married a daughter of said Eckels; that said Eckels agreed with his said two sons-in-law to convey to each of them in severalty, separate portions of a certain lot of ground in the town of Cumberland then owned and claimed by him; that said Eckels accordingly did convey to the said Beall the piece or parcel promised to be conveyed to him; that said McNamee never received a deed from said Eckels so far as the complainant could ascertain, for the piece of land promised and agreed to be conveyed to him, and which was the same piece mentioned in the aforesaid mortgage; that after said agreement McNamee proceeded to erect the buildings and make the improvements as before mentioned upon said lot with the full knowledge of said Eckels who never objected to the making of said improvements; that Eckels frequently offered to convey the lot to McNamee upon receiving the sum of $100 as a consideration therefor; that McNamee always declined insisting upon his right to a conveyance of the lot without paying anything therefor.

The bill also stated that on the 20th of May 1859, McNamee applied for the benefit of the insolvent laws; that the schedule returned by him did not include the

real estate purporting to be conveyed by the mortgage; that Josiah H. Gordon was appointed trustee for the benefit of the creditors of McNamee, and that said Gordon as such trustee declined to sell said lot as the property of McNamee, unless the right to do so was settled and determined, so as to remove all doubts and clouds from the title; that McNamee from the commencement of the improvements up to the year 1862, had received the rents and profits of said real estate and the improvements erected thereon by him, without any account being made to Eckels therefor, and without any demand by him for an account.

The bill therefore prayed for an answer, under oath, and for a decree removing all doubts and clouds upon the title to said real estate, and settling and determining definitely the rights of the parties thereto, and that a decree for the sale of said real estate might be passed, and a distribution of the proceeds of such sale made in accordance with the rights of the parties, &c.

The answer of Eckels stated, amongst other things, that about the year 1844, at the request of his wife, the mother of Mrs. McNamee, he promised his wife to convey to Mrs. McNamee and her heirs a lot in the city of Cumberland, being the lot described in the mortgage to the complainant, and also to convey to her daughter Louisa then Mrs. Sewers, the lot adjoining, provided their husbands and they would build dwelling houses thereon, &c., that carrying out his said promise to Mrs. McNamee and her mother, the respondent furnished at his own cost, and hauled to the lot all the stone for the foundation of said house, that he procured the clay free of cost to Mrs. McNamee and her husband, for all the brick in said house, and furnished and hauled to the kiln, wood to burn the said brick; and furnished at his own cost, nearly all the lumber used in building said house, &c. The answer also averred that the respondent carried out

in good faith all that he promised in regard to the building of the house, and even more than he promised; and that he was willing and ready to make and execute a deed to Mrs McNamee and her heirs in accordance with and in fulfillment of his original promise; but the answer denied that the respondent ever promised to make a deed for said lot to the said Henry J. McNamee. The answer further stated that long prior to the execution of the aforesaid mortgage the respondent had a deed prepared by Mr. McKaig, conveying the said lot to Mrs. McNamee and her heirs, but that her husband refused to permit her to receive it, and the deed was never executed.

The answer of McNamee admitted the execution of the mortgage, and that he had applied for the benefit of the insolvent laws; that Eckels had a deed drawn to the wife of the respondent in 1846, and offered to execute it, and said he would not execute any other; that the respondent refused to permit his wife to accept said deed, because it was drawn to her and her heirs, and he then supposed that the deed gave her only a life estate in said property; he therefore refused to receive it. That Eckels never promised to convey the lot to the respondent personally; that he and Eckels jointly built the house and the house on the adjoining lot, which he aftewards sold to William Beall; that the building of the said house was a family arrangement, but the respondent always hoped to persuade Eckels to convey said house and lot to him; that at one time, after the execution of the mortgage, Eckels offered to execute a deed for said lot upon the payment to him of some hundred dollars and upwards, but he did not then say what kind of a deed he would execute, and the respondent stopped all conversation by a positive refusal to pay. That the arrangement in relation to the lot and the building said house, as the respondent understood, was made by the mother of his wife with said Eckels; and the respondent put up the house aided by

Eckels, without any distinct understanding with him on the subject. The respondent always hoped to have a satisfactory deed for said lot. The respondent admitted that Eckels never received or claimed the rents and profits of said house, but that he, the respondent, received the same, though whether in his own right, or in right of his wife, was the question in issue.

The answer of Gordon admitted the application of McNamee for the benefit of the insolvent laws, and the appointment of the respondent as trustee in insolvency; and submitted to such decree as should be passed in the premises.

Commissions were issued and testimony taken, which will be found sufficiently stated, for the purposes of the case, in the opinion of this Court. The Circuit Court, (Alvey, J.,) was of opinion that the contract or understanding between Eckels and McNamee in regard to the lot in question, was neither stated in the bill with sufficient certainty, nor shown in proof with that degree of definiteness, to entitle the complainant to specific execution; but that McNamee had an interest to the extent of the improvements placed upon the lot, and that such interest passed under the mortgage to complainant, and that the property should be sold by a trustee of the Court, and out of the proceeds of sale, the amount of the then value of the improvements placed on the lot by McNamee, should be distributed to his insolvent trustee, to be applied in payment of the mortgage claim of the complainant, under proper jurisdiction; and the residue of the proceeds of sale, after payment of costs and expenses, should be paid either to Eckels himself or to his daughter, as might be agreed, or as might be determined by the future order of the Court. A decree for the sale of the mortgaged premises was accordingly passed on the 5th of September, 1871, and Josiah H. Gordon was appointed trustee to make the sale. From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, BRENT and MILLER, J.

*Thomas J. McKaig*, for the appellants.

*J. H. Gordon* and *R. Chew Jones*, for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

There is no dispute in this case with regard to the legal propositions asserted in the opinion of the Circuit Court, they are abundantly supported by authority, and have been repeatedly recognized and enforced by this Court. The principle is well established, that if one person expends his money in making beneficial improvements on the land of another, upon the faith of a parol contract by the latter to convey; where specific execution of the contract cannot be decreed, because of the uncertainty in the proof of its terms, a Court of Equity will decree compensation to the extent of the value of such improvements, and in some cases, as in *King's heirs vs. Thompson and wife*, 9 *Peters*, 204, will grant relief by declaring the same to be an equitable lien upon the property.

On this principle, the decree of the Circuit Court in this case was passed, but after a careful examination of the record, we are of opinion that the facts as disclosed by the pleadings and proof do not bring it within that principle.

To entitle the complainant to the relief sought, it was incumbent upon him to prove that there was an agreement or understanding between Eckels and McNamee, either that the property in question, should be conveyed to the latter, or that he should have some interest or estate therein in his own right, or to use the language of the Supreme Court in *King's heirs vs. Thompson*, "that it should be in some manner possessed and owned by

him,'' and that upon the faith of such understanding or agreement, McNamee was induced to expend his money in erecting the house.

There is no sufficient proof of any such agreement or understanding ; on the contrary, the evidence is clear and uncontradicted, that the only understanding between the parties was, that when the house was completed, the property should be conveyed to the wife of McNamee, who was the daughter of Eckels.

This is distinctly stated not only in the answers of Eckels and McNamee, which being under oath and responsive to the bill, must be taken as proof, but it is also positively stated by both of them in their testimony taken under the commission.

This is the only direct testimony found in the record, with respect to the understanding between the parties, upon the faith of which the money was expended in the erection of the house. It is confirmed by the fact, proved in the case, that in 1846, after the house was completed, Eckels procured a deed to be prepared by Mr. McKaig, his attorney, conveying the property to Mrs. McNamee and her heirs.

It is true that the deed was not executed ; McNamee objecting to it, and desiring the deed to be made to himself. He seems to have entertained some hope or expectation that the property would be conveyed to him, but that is not sufficient, unless it was shown that there was some understanding or agreement on the part of Eckels to that effect, upon which his expectations were founded ; and both he and Eckels testify that there was none.

The facts and circumstances relied on by the complainant, to countervail this positive testimony, are as follows :

1st. It is proved by several witnesses, mechanics engaged in building the house, that they were paid by McNamee ; but that fact is consistent with the original understanding as stated by Eckels, that the property was

to be improved at the joint expense of himself and Mc-Namee, and should be conveyed to McNamee's wife to secure her a home.

2d. The possession of the property by McNamee, and the receipt of the rents by him, are relied on by the complainant as evidence that his title was acknowledged by Eckels; but as husband, he would have been entitled to the possession of the property, and the pernancy of the rents and profits, even if the legal estate had been vested in Mrs. McNamee, and these are not inconsistent with the fact that the property was intended to be conveyed to her.

3rd. The execution of the mortgage by McNamee to the complainant in 1852, is relied upon as evidence of his claiming and owning some right or estate in the property. Unquestionably if this were a case between the complainant mortgagee and McNamee, he would be estopped from asserting that he had no title at the time of the mortgage; but Eckels was not a party to the mortgage, nor was he in any manner connected with it, his rights are therefore not affected by it. Although the legal title to the property remained in him, and the mortgagee had constructive notice thereof by the public records, it does not appear that the latter made any inquiry of him with respect to the rights of McNamee in the property. Mrs. McNamee was not a party to the mortgage, and her rights are not impaired or affected thereby. She is entitled to claim the benefit of the agreement made between her husband and Eckels, whereby the ownership of the property was to be secured to her.

The contract was one resting upon a good and valuable consideration, and upon the evidence furnished in this cause she would be entitled to have it specifically performed, and upon proper proceedings for that purpose, a Court of Chancery would decree that the property should be conveyed to her.

Neither the complainant as mortgagee, nor the creditors of McNamee, have any claim as against her that the property should be sold to pay McNamee's debts. The mortgage was not executed till several years after the agreement for her benefit was made: and it does not appear that any debts of McNamee existed at the time the agreement between him and Eckels was made, and the money was expended by him in making the improvement; it is therefore free from all impeachment on the ground of being made in fraud of creditors.

For the reasons we have stated, the decree of the Circuit Court will be reversed and the bill dismissed, but without costs.

*Decree reversed.*

(Decided 20th December, 1872.)