## J. LEIPER WINSLOW *v.* JOSEPH ATZ

[No. 8, January Term, 1935.]

234

*Decided February 14th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*J. Leiper Winslow* and *Charles S. Hayden,* for the appellant.

*Rignal W. Baldwin, Jr.,* with whom was *Charles B. Bosley* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On and prior to December 22nd, 1930, the Universal Sand & Gravel Corporation owned a tract of land containing about twenty-five acres known as the Roa Hook property, situated in the Town of Cortlandt, Westchester County, New York, which was subject to a first mortgage for $18,000 to the Mercantile Credit Company, of Baltimore, and to a second mortgage for $122,000 to the American Security Company, trustee. One Frank K. Sauer represented the Universal Sand & Gravel Corporation, as attorney and agent, and J. Leiper Winslow represented the American Security Company and other corporations, as attorney and agent.

The first mortgage being in default, the Mercantile Credit Company, as mortgagee, had prior to that date instituted proceedings to foreclose it, and that proceeding was then pending in the New York Supreme Court, County of Westchester, against Winslow's clients.

On December 22nd, 1930, Sauer and Joseph Atz, a member of the New York Bar, met Winslow at the latter's office in Baltimore, and discussed (1) refinancing the first

mortgage, (2) delaying the foreclosure sale under the proceedings instituted by the Mercantile Credit Company, and (3) a sale of the property by Atz. Winslow said that "Mr. Sauer was his client who had arranged to pay off the first mortgage and all legal charges if defendant's clients would give him a half interest in their mortgage." As a result of their negotiations, Winslow and Sauer executed two agreements called herein "Agreement No. 1" and "Agreement No. 2."

Under Agreement No. 1, which was executed by Winslow as attorney and agent for the New York Tidewater Gravel Corporation, the Tidewater Bondholders' Corporation, and the American Security Company, designated as the contractor, and Frank K. Sauer, of Elizabeth, N. J., as attorney and agent for the Universal Sand & Gravel Corporation, designated as contractee, the contractee agreed to negotiate a loan to take up the first mortgage with interest and legal charges, and to have that mortgage extended for a period of three years. The contractor agreed to have a foreclosure proceeding pending "on the second mortgage" satisfied of record, or to deliver to the contractee fifty per cent. of the bonds accompanying such second mortgage. It was further agreed that the property described in the two mortgages should be held by the contractor and contractee as tenants in common equally, and the contract contained also this provision, that "any fee for title searches and legal fees of Joseph Atz of New York City shall be equally paid by the contractor and contractee herein." It contained other stipulations which are not material to the questions involved in this appeal.

Agreement No. 2 was executed by Winslow and Sauer as individuals and as attorneys and agents for the parties and corporations specifically mentioned in Agreement No. 1. Under it Atz was authorized to sell the Roa Hook property for $200,000 and from that sale he was to receive a commission of five per cent.

On January 2nd Atz wrote Winslow a letter, in which, among other things, he said:

"On even date herewith, I interviewed Mr. Pyne and Mr. Parker, of Emory and Pyne, the attorneys for the Mercantile Credit Company, and on behalf of the Universal Sand & Gravel Company filed a notice of appearance, and requested a stipulation for a period of twenty days, so that such corporation would not be in default. I likewise informed them, that, we hope, within the next ten days to pay the first mortgage.

"It is not clear to me, if the intent of the agreement entered into, the time we were at Baltimore, is to authorize me to appear for the various companies that you are interested in. The attorneys for the Mercantile told me, that no one on your behalf has appeared so far. Such an appearance should be made and a stipulation obtained, so that such corporations will not be in default, as we wish to keep our rights open until we have time to take up the first mortgage.

"If it is the intention of your associates and yourself to have me appear for you then it will be essential that I have an authorization in writing. I am enclosing such document."

The "authorization" referred to in that letter, after stating the title of the foreclosure case in the New York Supreme Court, Westchester County, continued:

"I, J. Leiper Winslow, of Baltimore, Maryland, individually, as agent, and as attorney for the following:

New York Tidewater Gravel orporation;
Tidewater Bondholders Corporation;
American Security Corporation as Trustee;

Do Hereby Authorize Joseph Atz, counsellor-at-law, of the City of New York, to appear and act as attorney for the various designated corporations herein, in the above-entitled action.

Dated, Baltimore, Md., January 3rd, 1931.

J. Leiper Winslow,
Individually, as agent and as attorney for the above-described corporations."

Winslow signed and returned the "authorization" to Atz and at the same time wrote him:

"I am enclosing document so that you can file same at the proper time. A Director of the Mercantile Credit Company called in my office today and stated that you had written their lawyers, that the first mortgage would be paid off within ten days."

To that letter Atz replied:

"On receipt of yours dated the 3rd of January, 1931, I promptly appeared in the first mortgage foreclosure proceeding for your various companies, and obtained an extension until the 28th of January, 1931, so that none of the defendants could get in default.

"I lodged with the Title Company a requisition for a certificate to be issued to the assignee of the first mortgage, that same is a first mortgage lien.

"Before the end of the week of the 12th, the prospective purchaser promises arrangements will be made as to a contract for the sale of this property."

Although it was conceded that there was no meritorious defense to the foreclosure proceeding, Atz, by manipulating the legal processes available for the protection of defendants in such cases, was successful in delaying the foreclosure for many months, but he did not succeed in obtaining a purchaser for the property, nor did Sauer succeed in refinancing the first mortgage.

Prior to October 1st, 1931, Atz's connection with the foreclosure proceedings appears to have terminated, and

on that day he sent Winslow a statement in which he charged Winslow and Sauer jointly $3,000 for:

"Professional Services Rendered:

In re: Foreclosure Action—Mercantile Credit Company vs. New York Tidewater Gravel Corporation, Tidewater Bondholders Corporation, American Securities Corporation, as trustee, and Universal Sand & Gravel Corporation, et als."

and $126.01 for expenses.

Winslow declined to pay the bill, and on May 10th, 1933, Atz brought this action in the Baltimore City Court against him to recover it. The declaration contained the six common counts, and there was filed with it a document called an "Account," which read as follows:

"J. Leiper Winslow, Esq.,
Munsey Building,
Baltimore, Md.
        "To: Joseph Atz, Dr.
Bill for Professional Services Rendered the 1st day of October, 1931, $1,571.01"

In response to the defendant's demand, Atz later filed a bill of particulars and an "Additional Bill of Particulars," in which he set out (1) the "authorization" contract of January 3rd, 1931, and (2) described in these terms his services:

"That the plaintiff in pursuance of the employment by the defendant, as set forth in the Bill of Particulars heretofore filed in this case, defended the foreclosure action for said defendant by interposing answers, defending motions, defending motions for judgment, making motion for accurate computation of interest, making motion to review previous motion as to interest, succeeding in having interest changed by appealing to the Appellate Court from an Order striking out defendant's answer, by acting generally in the foreclosure proceedings up to and

including an attendance at the sale under the foreclosure action, for which services the plaintiff has charged the defendant Fifteen Hundred ($1500.00) Dollars; that the plaintiff incurred one-half of the following expenses in connection with his services as hereinbefore set forth, viz:

1931

| | |
|---|---|
| Jan 9—At Title Co., White Plains, in re: Search. Expenses.............$ | 2.50 |
| March 1—Argument, Special Term, Part 1, White Plains................ | 3.50 |
| April 24—Paid for Papers on Appeal from Motion ..................................... | 74.40 |
| May 7—Special Term, Part 1, White Plains Before Witchief, J...... | 2.50 |
| 16—Telegraphed to Winslow............. | .36 |
| 28—Paid for printing Appeal............. | 25.50 |
| June 9—Special Term. White Plains........ | 2.50 |
| July 8—Service Co. answering actions in White Plains, and following Calendar numbers...... | 1.00 |
| Aug. 15-16-17 — Baltimore Conference with Sauer, Winslow and Taylor in re: Plan for Sauer to cooperate in purchase at foreclosure—expenses ........... | 12.50 |
| Aug. 20—Attended sale of property at White Plains............................ | 1.25 |

Total Disbursements...........$126.01"

A demurrer to the several counts of the declaration was overruled as to the counts for "work done," etc., and for "money paid," and sustained as to the others. Defendant then filed (1) general issue pleas, (2) a qualified denial of the execution of the "authorization," and (3) two other special pleas. As a result of these and subsequent pleadings, which need not be considered in detail, the defendant set up as a defense to the action: (1)

That he had been induced to sign the authorization by the false representation that arrangements had been made to "take up the first mortgage"; (2) that it was not signed for the purpose of enabling Atz to contest the foreclosure, because Atz and plaintiff knew there was no legitimate defense to that suit, but to give Sauer, who was in fact Atz's client, an opportunity of carrying out Agreement No. 1, and to give Atz time to sell the property under Agreement No. 2; (3) that Atz's activities in the foreclosure proceedings were not for the purpose of defending the same, but to harass and delay the mortgagee in the enforcement of a just claim and were against the will and direction of Winslow; and (4) that he, Atz, had been fully paid for his expenses by Sauer.

The trial of the case resulted on May 23rd, 1934, in a verdict for the plaintiff for $1,142.01. Defendant then filed a motion for a new trial and a motion in arrest of judgment, both of which were overruled. After a final judgment was entered on the verdict, on July 6th, he filed a motion to strike out the judgment, which was overruled, and on July 26th he took this appeal.

Exceptions 1 to 17 involve rulings upon evidence, exception 18 relates to the court's rulings upon the prayers, and exception 19 to the court's action in overruling defendant's motion to strike out the judgment.

From this statement of the case it is apparent that, when the authorization was signed Winslow, Atz, and Sauer were each in a different way interested in postponing the sale of the Roa Hook property in the foreclosure proceedings instituted by the Mercantile Credit Company. Sauer, whose client owned the ultimate equity, was interested because, unless the property brought more than $140,000, the aggregate of the principal sums due under the two mortgages, its equity would be extinguished; Atz was interested because if he sold the property for $200,000, he was to receive a commission of $10,000; and Winslow was interested because his clients, the second mortgagee, and certain bondholders, might sustain a heavy loss if the property were sold in the

foreclosure proceeding, and he would profit if Atz sold it for $200,000. It was to their common interest, therefore, to prevent or delay the foreclosure until Atz or Sauer could pay off the first mortgage or sell the property.

Winslow's contention was that the authorization contract should have been construed with contracts 1 and 2 as part of a single plan, under which Sauer was to get the money to negotiate a loan to take up the first mortgage, and Winslow and his clients considered as one party, and Sauer's client, the Universal Sand & Gravel Company, considered as another party, would then own the land or the mortgage bonds in equal shares, and Atz would endeavor to sell the land for $200,000; that Winslow signed the authorization only for the purpose of giving Atz formal authority to represent his (Winslow's) clients in the foreclosure suit; that Atz might thereby be enabled to negotiate with the first mortgagee for a stay of the proceedings in order that he (Atz) might have time to effect a sale of the property; that Sauer might arrange to pay off the first mortgage; that Atz's dilatory tactics were without Winslow's consent and against his will, and were so unethical that it would be contrary to public policy to permit him to recover compensation for them in a court of justice.

Atz's theory was that the authorization was a contract of employment, that Winslow was a party to it, that it was wholly independent of the other contracts, that when Winslow signed it he also by implication undertook to pay Atz for any services he might render under it, that he did render valuable services to Winslow's clients in the litigation, and that he was entitled to be compensated by Winslow therefor.

The first question presented by the record is whether the demurrer to the second and fourth counts of the declaration were properly overruled. The sufficiency of these counts is not to be tested by their form and substance as filed, but by their substance as affected by the bills of particulars subsequently filed in the case. 2 *Poe,*

*Pl. & Pr.* sec. 116, n 3; *Noel Construction Co. v. Armored Construction Co.,* 120 Md. 237, 87 A. 1049; *Nelson v. Close,* 147 Md. 216, 127 A. 751. The *nar.* counted against Winslow severally, whereas the contract alleged in the bill of particulars showed a joint contract by Winslow and others. A several action cannot, over seasonable and proper objection, with exceptions immaterial here, be maintained against one of several joint obligors. *A. L. I. Restatement, Law of Contracts,* sec. 117; *Williston on Contracts,* sec. 327; *Sittig v. Birkestack,* 38 Md. 164. But that defense is unavailing unless (a) it is presented by a plea in abatement, *Sittig v. Birkestack, supra, Cruzen v. McKaig,* 57 Md. 464, or (b) unless the contract shows on its face that it is joint, as in this case, and the plaintiff fails to show why all the parties jointly liable have not been joined. *Cruzen v. McKaig, supra.* The two counts were therefore bad, and the demurrer to them should have been sustained. We do not regard the error as reversible, because the defendant failed either in this court or in the trial court to urge that objection to the counts, and it may be treated as waived.

Defendant does contend, however, that they are bad because the contract did not bind him, since he was not a party to the litigation. There is no apparent point to that objection, because by the contract Winslow expressly stated that he made it "individually," as well as in the capacity of agent and attorney for the corporations named therein, and he did not authorize Atz to represent him, but to represent the defendant corporations. If he was willing to undertake that responsibilty, there is no apparent legal reason why he should not have done so, nor is there any reason why, having done so, he should not be answerable for his undertaking.

Atz in the course of his testimony had sworn that he had incurred in the course of the litigation the expenses itemized in his "Additional Bill of Particulars." In connection with that testimony he was asked to tell what the charge for expenses "In re Title Search" of January 9th was "for." An objection to the question was overruled,

and that ruling is the subject of the first exception. There was no evidence that Winslow had ever expressly authorized Atz to incur that expense. He had agreed with Sauer that "any fee for title searches and legal fees of Atz" should be equally borne by Winslow and Sauer, but Atz was not a party to that contract, and even if it be assumed that it was so far beneficial to him that he could have maintained an action on it, a question not wholly free from doubt [*Owings v. Owings,* 1 H. & G. 484; *Seigman v. Hoffacker,* 57 Md. 321; *McNamee v. Withers,* 37 Md. 171; *Small v. Schaefer,* 24 Md. 143; *Price v. Mut. Reserve Life Ins. Co.,* 102 Md. 686, 62 A. 1040; *Williston on Contracts,* sec. 356 *et seq.;* 13 *C. J. "Contracts"* secs. 808, 815, and notes], nevertheless, in his declaration as particularized, he did not in this action sue on the contract between Winslow and Sauer, but upon the contract or authorization signed only by Winslow, and he was therefore limited in his proof to obligations arising out of that contract (*Noel Const. Co. v. Armored Const. Co., supra; Nelson v. Close, supra*), which contained no stipulation as to the payment of expenses, nor even a reference thereto. He was therefore entitled to recover only for such expenses as were reasonably necessary to the performance of his duty as attorney for the defendants in the foreclosure proceedings. 6 *C. J.* 734. There was nothing to show that the "Title Search" had any connection with that litigation, and the objection should have been sustained.

After qualifying as an expert on attorney's fees in New York, Atz was asked, "What would you say would be a fair and reasonable fee for the services that you performed for Mr. Sauer and Mr. Winslow?" and over objection was permitted to answer, and replied, "Three thousand dollars." The question was objectionable because the issue in the case was the value of the services rendered by Atz to Winslow and his clients, not to Sauer, who was not a party to the litigation in which Winslow authorized Atz to appear. The form of the question was also objectionable because the inquiry was, not what Atz "would say" his fee ought to be, but what under all the

circumstances of the case would have been reasonable compensation for services of like character at the place where they were rendered. The force of that objection is apparent when it appears that Atz had previously testified that a reasonable fee for defending a mortgage foreclosure would be ten per cent. of the judgment. The mortgage was for $18,000, and if the judgment was approximately for that amount, Atz's opinion of what he ought to receive would have been nearly seventeen per cent. of the judgment.

The third exception relates to the rejection of an offer of certain records from the New York Supreme Court, Appellate Division. It does not appear that the records were properly authenticated, and we find no error in that ruling, nor do we find any error in the ruling involved in the seventh exception, which deals with the refusal of the court to permit "an official edition" of the rules of the New York courts to be offered in evidence. The book is not before us, and it will be presumed that it was not properly authenticated.

The fourth and sixth exceptions relate to the admissibility of certain correspondence between Winslow and Atz. The correspondence was relevant to the issues in the case and properly admitted.

The sixth exception relates to the action of the court in refusing to permit counsel for defendant to ask Atz to define "sham and frivolous pleading." It did not appear that the phrase had any artificial meaning, and we find no error in that ruling. The eighth exception relates to the rejection of evidence as to what the attorneys for the Mercantile Credit Company charged for their services in the foreclosure suit. Since that may have been fixed by contract, there was no error in that ruling.

Exceptions 10 to 13, inclusive, 14 and 15, 16 and 17, relate to the refusal of the court to permit the defendant to prove the circumstances under which Agreements Nos. 1 and 2 were executed. Inasmuch as the "authorization" agreement contained no express promise to pay fees, and as that testimony was material and relevant to Winslow's

defense theory, it should have been admitted. If as a result of contracts Nos. 1 and 2, and negotiations between Atz, Sauer, and Winslow, they were jointly engaged in an adventure in which no one was expected to ask or receive any compensation for any services he might render other than from profits realized from the adventure, obviously Atz was not entitled to recover for services in the foreclosure suit. Such an agreement was in no sense in conflict with the authorization agreement, which contained no reference to compensation. It would have been competent for Atz to have shown that by an oral contract his fee was fixed at a particular sum, and it was equally competent for Winslow to show by an oral contract that there was to be no fee.

At the close of the case the defendant offered twenty-one prayers, all of which were refused, and the court then instructed the jury orally as to the law of the case. The defendant objected to the refusal of his prayers, and also to the court's instruction.

It is not material whether the jury is instructed as to the law by written instructions offered by the parties, by written instructions prepared by the court, or orally by the court, if in fact they are fully and accurately informed of the law applicable to the facts of the case by one or all of these methods. But if the court assumes the responsibility of rejecting proper instructions submitted by the parties, and of itself instructing the jury as to the law under which a recovery may be had or defeated, it is bound to instruct them completely and accurately as to every fact and legal principle material to the conclusion to which the instruction is directed. There is no positive rule, under the practice recognized in this state, against oral instructions; but, on the contrary, there may be cases in which that method of instructing the jury may not only be appropriate but essential to any proper performance of the duties imposed upon the court as a minister of justice. Ordinarily, however, the better practice is to formulate and deliver to the jury written instructions, because it rarely happens that a jury, composed usually

of laymen, can long remember clearly or accurately the form or even the substance of oral instructions. That is especially true where the facts of the case are complicated, the law difficult, or the instruction necessarily long. *Rosenkovitz v. United Rys. Co.*, 108 Md. 306, 70 A. 108; *Mutual Life Ins. Co. v. Rain*, 108 Md. 353, 70 A. 87.

It is suggested on behalf of the appellee that the prayers offered by the defendant were "so unreasonably long, involved and numerous for a case of this kind that it was really not incumbent on attorney for the plaintiff and the trial court to stop the proceedings indefinitely to study them in detail." It is, of course, possible that defendant may have regarded the possibility of a judgment against him with more concern than plaintiff's counsel, and there is nothing in the record to indicate that any such course was followed in this case or that the trial court in any way approved that conception of its power and functions as a court of justice. The primary reason for courts is the administration of justice, but that end can not well be served if the theories and contentions of the parties made in good faith are to be ignored because it is not convenient to take time for their consideration.

Twenty of the defendant's prayers were properly refused; the tenth should have been granted. The first and second, which were demurrer prayers, ignored the fact that, as Winslow had expressly authorized Atz to act as attorney for the defendants in the foreclosure suit, the *prima facie* presumption was that he also undertook to pay for them. The third prayer was properly refused because it ignored evidence offered by the plaintiff that his employment was not to contest the foreclosure but to delay it; his "3A" prayer because it ignored the fact that, if Winslow authorized the employment, he also authorized Atz to incur such expenses as were reasonably incident thereto; his fourth and fifth prayers because there was no evidence legally sufficient to support the hypothesis of said prayers that sham answers and motions were filed in the foreclosure suit contrary to the rules of the Supreme Court of New York, Appellate Division; his sixth

prayer because it ignored Atz's testimony that Winslow had orally authorized him to defend the foreclosure suit "so as to gain time"; his seventh, eighth, ninth, and eleventh prayers because they ignored evidence tending to prove that, while Atz's service in delaying the foreclosure may have benefited him, they may also have benefited the defendant, and also because Winslow's liability rested upon his overt acts and not upon his undisclosed intention; his "9A" prayer because the letter upon which it was predicated, considered in connection with other evidence in the case, was susceptible of a different construction than that placed upon it in that prayer, and as offered was likely to confuse the jury; his twelfth prayer because it involves an erroneous construction of Agreement No. 1; his thirteenth prayer because it assumes that the letter upon which it is predicated was a definite revocation of Atz's employment, whereas it was susceptible of a different construction; his fourteenth prayer because it improperly segregates evidence, is needlessly complex and confusing, and ignores evidence tending to prove that Sauer, Atz, and Winslow were engaged in an undertaking beneficial to each of them, and that the services rendered by Atz were to further their common interests; his fifteenth prayer because it involves the inadmissible theory that a promise to negotiate a loan must be accepted as an absolute undertaking to procure a loan; his seventeenth and eighteenth prayers because they ignored evidence tending to prove that the authorization contract was independent of contracts Nos. 1 and 2; and his nineteenth prayer because it involved the erroneous theory that the measure of plaintiff's compensation in any degree depended upon defendant's financial standing and plaintiff's knowledge thereof.

The defendant's sixth prayer denied the plaintiff's right to recover for any services rendered in contesting the mortgage foreclosure, if he knew that the authorization signed by the defendant was not signed for that purpose, and his sixteenth prayer announced the proposition that, if Atz induced Winslow to sign the authorization

contract by false and material misrepresentations, he was not entitled to recover for any services rendered under that contract. These prayers were also properly refused because they ignored evidence tending to show a ratification of the contract after Winslow knew of the misrepresentation, a criticism also applicable to other prayers of the defendant relating to those defenses.

As stated above, the court instructed the jury orally. After the recital of certain conceded facts, the jury were told that Atz had "immediately" gone to work, and that as a result of his labors he delayed the foreclosure of the mortgage for "a long period of months" and that for such services Atz was entitled to recover unless Winslow was "tricked and defrauded into employing" Atz. As far as it goes, that statement of the law as an abstraction may have been correct, but since it went to a recovery, as applied to the facts of this case it was erroneous because it excluded from the consideration of the jury evidence tending to support Winslow's contention that, under the agreement between him, Atz, and Sauer, Atz was not to make any charge for his services in the foreclosure suit. Since there was evidence tending to support that theory, it should have been submitted to the jury.

It is suggested that that defense involves a violation of the rule against varying a written contract by parol. The fallacy of that contention lies in construing the authorization contract as a complete contract for compensation. In itself it is no more than what it purports to be, a mere authorization, and is silent as to compensation. Whether it was also a contract to pay Atz the reasonable value of his services depended upon the intention of the parties, to be gathered from their situation, the object of the authorization, and the circumstances under which it was executed. It is true that, if nothing else appeared, a promise might be inferred from the authorization, to pay for services rendered under it; but such an inference would be rebuttable by proof that the parties intended otherwise.

For the establishment of such an intention, *Wigmore, Evidence,* vol 4, sec. 2430 (1st Ed.) submits three tests:

"(1) Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto. * * *

"(2) This intent must be sought where always intent must be sought, namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. * * *

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges, and is in contrast with the looser and incorrect inquiry (*post* par. 2431) whether the alleged extrinsic negotiation contradicts the terms of the writing."

The same principle is very clearly expressed in *Clark v. Townsend,* 96 Kan. 650, 153 P. 555, 556, where, in dealing with a contract of employment which was silent as to compensation, the question arose as to whether it could be shown by parol that the parties intended that there should be no charge for the services rendered under the contract. In the course of the opinion it was said:

"Therefore, where a writing is silent as to some particular element of a contract (for instance, the time within which it is to be performed, or the amount to be paid), under circumstances compelling the inference of an intention to be governed by the standard of what is reason-

able, a specific agreement on the subject, resting in parol, may not be shown. 17 *Cyc.* 570, 571, notes 66 and 69; 9 *Encyc. of Evidence,* 349; 2 *Parsons on Contracts,* p. *552; *Standard Box Co. v. Mutual Biscuit Co.,* 10 Cal. App. 746, 756, 103 P. 938; *Cameron Coal & Mercantile Co. v. Universal Metal Co.,* 26 Okl. 615, 110 P. 720; *Smith Sand & Gravel Co. v. Corbin,* 81 Wash. 494, 142 P. 1163.

"But whether oral evidence may be allowed to supplement a contractual writing, by supplying a term not therein referred to, depends upon whether the instrument was intended to cover that feature of the transaction. 4 *Wigmore on Evidence,* sec. 2430; 17 *Cyc.* 741. * * * Where one performs services at the request of another without any express agreement as to compensation, a contract to pay a reasonable amount is implied, in the absence of circumstances giving rise to a different inference. Yet this fact does not prevent the making of a memorandum covering the character of services to be rendered, but not the amount of compensation.

"The presumption that one who performs services at the request of another is entitled to reasonable compensation is rebuttable. * * * Therefore evidence was competent that tended to show an express agreement that no charges should be made, or to show circumstances justifying the inference that such was the intention of the parties."

And in that case the court cited *Count Joannes v. Mudge,* 6 Allen (Mass) 245. See also 22 *C. J.* 1077, 1261, 1288-1290, 1296; 40 *Cyc.* 2485; 4 *Wigmore on Evidence,* secs. 2430, 2431.

And assuming that there was legally sufficient evidence to support the hypothesis, it was for the jury, and not for the court, to determine whether the parties intended that an implied promise to pay what the services were worth should be integrated with the "authorization." *Roberts v. Bonaparte,* 73 Md. 191, 20 A. 918.

The instruction also ignored defendant's contention that the authorization contract was void because its sole purpose was to obstruct the administration of justice by

the wrongful use of the New York court's process to delay the collection of a debt to which Atz knew there was no legitimate defense. If there was evidence legally sufficient to support that contention, that would have been a valid defense; but, however it may have been abused, there is no evidence legally sufficient to show that when the authorization was executed the parties intended that it should be so used. Reference to it was therefore properly omitted from the instruction.

Another objection to the instruction was that it ignored the admitted fact that Atz had been paid by Sauer for expenses claimed in his additional bill of particulars. If he had been paid by Sauer, he had no possible right to be paid again by Winslow. That omission was particularly injurious because of the refusal of defendant's tenth prayer, which should have been granted, and it is apparent, from the record filed in this court, that the jury not only included these expenses in their verdict, but also allowed a greater amount for them than the plaintiff claimed. For while he gave the aggregate amount of the items as $142.01, the correct addition of the items particularized is $126.01.

The remaining question submitted is whether the court erred in overruling defendant's motion to strike out the judgment. That motion is, under another name, merely a motion for a new trial, and presents no question reviewable by this court. *Carter's Digest*, vol. 2, p. 1185; *Gallagher v. Kornblatt*, 149 Md. 306, 131 A. 450.

For the errors indicated it becomes necessary to reverse the judgment from which this appeal was taken.

> *Judgment reversed, and case remanded for a new trial, with costs to the appellant.*

PARKE, J., filed a separate opinion as follows:

The writer believes it a sound conclusion that the parties on this appeal had expressed their contract in writing, and that, therefore, the learned presiding judge at *nisi prius* was not in error in excluding parol testimony in respect to matters about which the parties had agreed in writing.

On December 22nd, 1930, J. Leiper Winslow, individually, and as attorney and agent for several other parties in interest, entered into a contract in writing with Frank K. Sauer as attorney and agent for a disclosed principal, whereby Sauer agreed to negotiate a loan to take up a first mortgage of $18,000 with interest and legal charges, and to have the mortgage extended for a period of three years, and to have the pending suit for foreclosure under a second mortgage on the same land continued, and either satisfied of record, or, if not, to deliver to Winslow one-half of the bonds secured by the second mortgage. The two parties agreed that, subject to the first mortgage lien, interest, and charges, they should hold the mortgaged premises as tenants in common; and "that any fee for title searches and legal fees of Joseph Atz, of New York City, shall be equally paid" by Sauer and Winslow. On the same day and as an accompaniment of this contract, Winslow and Sauer executed a power of attorney to Atz, authorizing him to sell the mortgaged real estate, within ninety days, at a specified price and on prescribed terms, for a reward of five per centum commissions. These two documents were the outcome of a conference in Baltimore of the three men, and Sauer and Atz returned to the State of New York, where the land was situated and the foreclosure proceedings had been instituted. Thereafter, in response to an inquiry from Atz, Winslow, in the same capacities as he had executed the contract with Sauer, sent to Atz a paper writing authorizing the latter to appear in the foreclosure proceedings described in the agreement between Sauer and Winslow, and to act there as attorney for three of the corporate defendants in these proceedings. The paper writing was headed by the title of the case in the New York Supreme Court, County of Westchester, and then proceeded in these words:

"I, J. Leiper Winslow, of Baltimore, Maryland, individually, as agent, and as attorney for the following:

New York Tidewater Gravel Corporation; Tidewater Bondholders Corporation; American Security Corporation as Trustee:

Do Hereby Authorize Joseph Atz, counsellor-at-law, of the City of New York, to appear and act as attorney for the various designated corporations herein, in the above-entitled action.

Dated, Baltimore, Md., January 3rd, 1931.
J. Leiper Winslow,
Individually, as agent and as attorney for the above-described corporations."

The plaintiff entered his appearance in the cause, and rendered services for which he brought an action on the common counts. The bill of particulars with the action refers to the paper writing of January 3rd, 1931, as the authority for the plaintiff's appearance and services in the foreclosure proceedings in New York, and sets out the action to be for one-half of a professional fee of $3,000, and for one-half of itemized expenses incurred by the plaintiff.

The three documents were in evidence, and, manifestly, they all relate to different phases of one subject-matter. The power of attorney to sell the land is complete within its own four corners, but the contract of Atz with Sauer and Winslow is evidenced by the two paper writings; the first having been signed on December 22nd, 1930, by Winslow and Sauer, and the second by Winslow on January 3rd, 1931. These last two instruments, when taken together, constitute a contract in writing between Atz and Winslow, in which the minds of the parties met and agreed with respect to the services to be performed by Atz, and that for these professional services Atz was to be paid a fee of which one half was to be paid by Sauer and the other half by Winslow. Having so agreed in writing, neither of the parties has the right to introduce parol testimony either of prior proposals and negotiations of the parties, or of anterior or contemporaneous conditions or agreements, qualifying, modifying, or changing the

terms of the written contract. The failure of the contracting parties to agree on a specific fee in ·a contract in writing providing for its absolute payment does not enable the party, who has agreed to pay one-half thereof, to offer parol testimony that his obligation was conditional or contingent. *Wigmore on Evidence* (2nd Ed.) sec. 2435; *Power v. Allied Asphalt Corporation,* 162 Md. 175, 186, 187, 159 A. 251; *Crothers v. National Bank,* 158 Md. 587, 595, 596, 149 A. 270; *Bremmel v. Clifton Realty Co.,* 146 Md. 56, 66, 125 A. 905; *Lazear v. National Union Bank,* 52 Md. 78, 119.