CEARFOSS *v.* WOLFINGER, EXECUTOR
[No. 121, October Term, 1949.]

*Decided April 13, 1950.*

The cause was submitted on briefs before MARBURY, C. J., and COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Omer T. Kaylor* and *Francis H. Urner,* on brief, for appellant.

*D. Lindley Sloan, William A. Gunter,* and *Samuel C. Streit,* on brief for appellees.

GRASON, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrel to an amended bill of complaint. The case was originally instituted at law in the Circuit Court for Washington County, removed to the Circuit Court for Carroll County, where a demurrer was sustained to the declaration, and an amended declaration filed and a demurrer sustained to it, followed by a submission to a judgment of non pros. The amended bill in this case is sought to be brought under the Uniform Declaratory Judgments Act, Article 31A, 1947 Supplement to the Code. `

The bill is quite long but the material matters set out can be briefly stated. Jesse O. Snyder died February 10, 1941, testate. Augusta M. Cearfoss and William Firey Snyder, his brother and only heir at law, were named executors. Miss Cearfoss was the principal beneficiary under the will. William Firey Snyder, the brother, gave notice that he was going to caveat the will.

Miss Cearfoss employed Scott M. Wolfinger and Frank G. Wagaman, attorneys, to defend the will. The employment was verbal and not written. It is alleged in the amended bill that the employment was not joint, but that each lawyer entered into a separate and distinct contract with Miss Cearfoss. No terms of their employment are set out, and nothing is alleged as to the remuneration each lawyer was to receive under the alleged verbal contract. They were successful in effecting a compromise with William Firey Snyder on behalf of their client, Miss Cearfoss. The notice of caveat was withdrawn, and on February 18, 1941, the will was probated in the Orphans' Court for Washington County.

On March 20, 1941, the following paper was signed by Scott M. Wolfinger, Frank G. Wagaman and Augusta M. Cearfoss:

"In Confirmation, of my agreement with Frank G. Wagaman and Scott M. Wolfinger before the Will of Jesse O. Snyder was probated I agree to pay to Frank G. Wagaman and Scott M. Wolfinger for their services in connection with the settlement made with W. Firey Snyder 15% of value of the benefits coming to me under said Will and they agree out of said amount to pay Daniel W. Doub for his services to me in that connection."

On April 1, 1941, Miss Cearfoss visited the law office of Frank G. Wagaman, requested to see the instrument which she signed on March 20, 1941, and when it was handed to her she left the office with it, and apparently it has never been seen since. That evening she put an envelope containing a check signed by her for $10,000, to the order of Frank G. Wagaman, Scott M. Wolfinger and Daniel W. Doub, under the door of Mr. Wagaman's office. He got the check and returned the same to her. It is averred that the amount of said check is far less than what is due; that Scott M. Wolfinger died on April 10, 1941, and that William C. Wolfinger and Richard G. Wolfinger duly qualified as executors of his estate; that William C. Wolfinger has since died; that in July, 1941, Miss Cearfoss settled with Frank G. Wagaman for the

sum of $4,000, without the consent of the personal representatives of Wolfinger; that thereafter Miss Cearfoss filed a petition in the estate of Jesse O. Snyder, praying that the court reimburse her for the $4,000 she personally paid to Wagaman for his services in defense of the will, and that an order was signed by the Orphans' Court authorizing the payment to her of the said $4,000 to Frank G. Wagaman. It is alleged that Miss Cearfoss received from the services of the said Wagaman and Wolfinger more than $271,696.75. There are matters stated in the bill that we need not narrate.

The bill prays: (1) Interpretation of the paper writing of March 20, 1941, and a declaration of the rights and interests and obligations of the plaintiffs and defendant; (2) a determination of the amount due by the defendant to the plaintiffs, and a decree for said amount; (3) that defendant answer the bill under oath and reveal facts regarding the contract of March 20, 1941.

It is conceded that Frank G. Wagaman died on November 12, 1941.

The bill states that these lawyers verbally agreed to accept the employment by Miss Cearfoss and the only thing alleged is that Miss Cearfoss entered into a separate contract with Wagaman and entered into a separate contract with Wolfinger. The amount of money each was to receive is not stated and whether they were employed at the same time is not disclosed. As far as the bill is concerned, nothing is disclosed regarding the terms and conditions of the employment of these attorneys by Miss Cearfoss, but the "confirmation" of their verbal contract, under date of March 20, 1941, is perfectly plain. By it Miss Cearfoss employed Wagaman and Wolfinger, and for their services agreed to pay them 15% of the value of the benefit that she would receive by reason of their services. This is so plain that anyone can understand its meaning. What interpretation this paper needs in order to make it more understandable and intelligible than it is is hard to conceive. It is not obscure—it is not doubtful—it contains nothing for

the application of any rule of construction—it confirms the employment of these two lawyers, and it states what their compensation shall be. It is a joint contract, that is to say, these two lawyers will work together for Miss Cearfoss for the accomplishment of her best interest. *Spencer v. McGuffin,* 190 Ind. 308, 130 N. E. 407, 14 A. L. R. 385.

"So a promise to two lawyers to pay a sum of money in return for certain services to be rendered by them in a suit is joint." *Williston on Contracts* (Revised Edition) Vol. Two, sec. 325, pages 943-944.

A contract with several persons for payment to them of a sum of money is a joint contract, and all payees have a joint interest therein, so that no one can sue alone for his proportion. *Brandenburger & Marx v. Heimberg* Mun. Ct., 34 N. Y. S. 2d 935; *Kerns v. Renshaw,* 162 Okl. 272, 20 P. 2d 177; *Allen v. Elwell,* 129 Kan. 296, 282 P. 706; *Rainey v. Smizer,* 28 Mo. 310.

*Brandenburger & Marx v. Heimberg, supra,* quotes *Parsons On Contracts,* volume 1, 8th Edition, Section 1, Chapter 2, page 10: " 'Wherever an obligation is undertaken by two or more or a right given to two or more, it is the general presumption of Law that it is a joint obligation or right. Words of expressed joinder are not necessary for this purpose; but on the other hand there should be words of severance, in order to produce a several responsibility or a several right', and on page 12 it is continued—'As a contract with several persons for the payment to them of a sum of money is a joint contract with all and all the payees have therein a joint interest; so that no one can sue alone for his proportion.' " [34 N. Y. S. 2d 937].

In the case at bar the contract confirmed by the paper writing dated March 20, 1941, was joint and when Mr. Wolfinger died the amount of the fee was payable to Mr. Wagaman, and he alone could sue at law. Upon Wagaman's death it was the duty of his personal representatives to collect what was due and owing under the joint contract, and to remit to Wolfinger's representatives

the portion of the fee collected which was due the estate of Wolfinger. *Pleading and Practice, Poe,* Vol. 1, Tiffany's Edition, sec. 352, page 322; *Kent v. Holliday,* 17 Md. 387; *Wallis v. Dilley,* 7 Md. 237; *Williams v. Fidelity & Deposit Co. of Maryland,* 121 Md. 222, 88 A. 119; *Winslow v. Atz,* 168 Md. 230-242, 177 A. 272.

In *Farni v. Tasson,* 1 Black 309, 17 L. Ed. 67, at page 69, it is said: "When there are several covenants by the obligors, as, for instance, to 'pay $300 to A and B, viz.: to A $100, and B $200,' no doubt each may sue alone on his several covenant. The true rule, as stated by Baron Parke, is, that 'a covenant may be construed to be joint or several, according to the interests of the parties appearing upon the face of the obligation, if the words are capable of such a construction; but it will not be construed to be several, by reason of several interests, if it be expressly joint.' "

And we say here, as it was said there: "In this case, the covenant is joint, and will admit of no construction."

The bill set up a contract which, on its face, is so clearly a joint contract that it needs no construction. If it has not been performed by Miss Cearfoss, as alleged by the plaintiff, an action for breach thereof is at law, in the name of the personal representative of the surviving joint contractor, for the benefit of both or of the one not barred by settlement operating as a covenant not to sue.

If plaintiff's contention is that his testator made an oral, several contract, which was not, after performance, through the "parol evidence rule" or otherwise, integrated in a written "confirmation" of a joint contract, such a construction should be made and supported by appropriate allegations and proof and not by contradictory allegations that a several contract was made orally and "confirmed" in writing as a joint contract.

We do not think that this is a case for the exercise of discretion to assume jurisdiction under Article 31A, 1947 Supplement to the Code, known as Uniform Declaratory Judgments Act.

56

The remedy in this case is at law, and the demurrer to the second amended bill of complaint should have been sustained.

*Decree reversed, bill dismissed, with costs.*